[Civ. No. 2141. Third Appellate District.—December 31, 1920.]

F. A. MELROSE, Respondent, v. LUCY W. COOLEY et al., Defendants; COLUMBIA CONSOLIDATED MINES COMPANY (a Corporation), et al., Appellants.

[1] TRESPASS—CONVERSION—OWNERSHIP—EVIDENCE.—A judgment for the plaintiff in an action for trespass in tearing out a pipe-line and for conversion of the removed property must be reversed where the action was tried upon the theory that plaintiff was the sole owner and the record shows that she was the owner of only an undivided one-half interest of the line.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Reversed.

The facts are stated in the opinion of the court.

R. F. Lewis for Appellants.

J. M. Walling and James Snell for Respondent.

HART, J.—The appeal in this action is from a judgment for plaintiff in the superior court of Nevada County for $750, based on a complaint which sets forth two causes of action—the first for trespass, in tearing out a certain pipe-line, and the second for conversion by the defendants of the pipe-line so removed. The amount sued for was $14,800, being double the amount of actual damages claimed to have been suffered, the complaint alleging that the trespass was malicious and one with an evil intent to vex, annoy, and injure the plaintiff. The cause was tried before a jury.

This action grows out of a sale of a pipe-line under an execution issued on a judgment entered on the twentieth day of April, 1916, in an action wherein one J. H. Hunt sued the plaintiff's husband, N. M. Melrose, to recover the sum of $494.23, alleged to be due said Hunt from said Melrose.

The complaint in the present action alleges that the plaintiff was the owner of a water right on Missouri ravine, in Nevada County, and was also the owner of a pipe-line leading from Missouri ravine to Iowa ravine and thence, to a reservoir, and that the defendants had knowledge of this ownership; that within one year preceding the commencement of the action (the action was commenced April 18, 1918), but at a date unknown to the plaintiff, the defendants tore out the pipe-line and flume mentioned and removed pipes comprising a part of said line and converted 1,300 feet thereof to their own use.

The controversy is as to the ownership of the pipe-line and flume seized and sold under the execution issued in the action of *Hunt v. N. M. Melrose*, above referred to, the plaintiff claiming that she acquired ownership thereof through a conveyance from her husband and also from one Fontz prior to the issuance and levy of said execution, and the defendants contending that the conveyance by her husband did not carry with it the pipe-line, etc., and the

conveyance of Fontz, if it passed any title at all to plaintiff, vested her only with a one-half interest in the property sold as indicated.

The evidence shows that N. M. Melrose, on or about January 1, 1914, purchased a mining claim known as the, "Missouri placer"; that the Missouri placer embraced the ground on which the diversion of the waters of a stream named and known as Missouri ravine was effected; that after said Melrose became the owner of the Missouri placer, he constructed the pipe-line and the flume, which are involved in this action, and which pipe-line led from Missouri ravine, he testifying that he built the pipe-line for the purpose of using the waters of Missouri ravine in working the Ocean Star mine for the Ocean Star Mining Company, of which he was then president and manager. All the pipe-line and the flume, which are referred to in the complaint, with the possible exception of about ninety-six feet of the pipe-line, were placed by Melrose and were at all times maintained on and across lands owned by one Lucy W. Cooley. At the time that the pipe-line, etc., was built, the Cooley properties, which embraced the Ocean Star mine and which had previously been acquired by Lucy W. Cooley from her husband, were under option for the sale thereof to the Ocean Star Mining Company. Subsequently to the construction of the pipe-line by Melrose, the latter, by deed dated April 15, 1915, conveyed the Missouri placer mine, together with the improvements thereon, to his wife, the plaintiff herein. In said deed of conveyance the pipe-line was not specifically mentioned. N. M. Melrose continued to operate and manage the Ocean Star Mining Company's business until the month of October, 1915. At this particular time the option held by said mining company on the Cooley property had expired and was forfeited. On August 1, 1915, however, the Ocean Star Mining Company sold all its right, title, and interest in and to the said pipe-line to Kohler and Olson for the stated consideration of $1,868.00. On May 1, 1916, Kohler and Olson sold and transferred the pipe-line to Fontz, who, on October 7, 1916, sold an undivided one-half interest in the pipe-line to the plaintiff, F. A. Melrose. The instrument conveying said property to Kohler and Olson was signed as follows: "Ocean Star Mining Co., pr. N. M.

Melrose, Pres. and Gen'l Manager. A. Perry, Secty & Treasurer, Vic. Pres. (Seal).''

J. H. Hunt, plaintiff in the action against N. M. Melrose, in ·which the former obtained a judgment against the latter in the sum of $484.23, bought the pipe-line at the sale under the execution issued on said judgment, and, there having been no redemption, a sheriff's deed including said pipe-line was executed to Hunt, who had previously granted his interest in the pipe-line to defendant, Klinker.

In the month of March, 1916, the defendant, Klinker, took possession of the Cooley properties which, as seen, had been under option to the Ocean Star Mining Company. Klinker, when taking such possession, was the representative of the defendant, Columbia Consolidated Mines Company. This company had become the owner of . several mines, including the Ocean Star. Possession of the Cooley properties was taken by the Columbia under an option from Lucy W. Cooley.

The plaintiff, over objection by defendants, was allowed to introduce in evidence a deed, dated March 16, 1914, from M. D. Cooley, purporting to convey to the Ocean Star Mining Company a right of way for a pipe-line across what was known as the German quartz claim. There was, however, introduced by defendant a deed from M. D. Cooley to his wife, Lucy W. Cooley, dated October 25, 1913, granting to her said German quartz claim. There was no evidence showing that Lucy W. Cooley was not the owner of the German quartz claim by virtue of the latter deed at the time of the purported granting by her husband of a right of way for a pipe-line over said mine. It follows, therefore, that M. D. Cooley, when attempting to grant said right of way to the Ocean Star Mining Company; had no interest in the German quartz claim which he could convey.

The question of the ownership of the pipe-line in dispute would seem, from a mere superficial examination of this record, to be enveloped in more or less obscurity or, at least, confusion; but a careful analysis of the evidence, considered in the light of the law respecting appurtenances to real property, has made it clear to our minds that the plaintiff acquired no interest in the pipe-line by virtue of the conveyance to her by her husband of the Missouri

placer mine. There was no mention of the pipe-line in said instrument of conveyance, and the said pipe-line was neither appurtenant to nor a fixture of said mine, for it was not used, or even intended to be used, with that mine for its benefit (Civ. Code, sec. 662), or in working or developing said mine. (Civ. Code, sec. 661). Nor, in our opinion, was it a fixture to the Missouri placer within the meaning of section 1013 of the Civil Code, for it was placed on the property of said mine merely because it was at that point that the diversion of the waters of Missouri ravine, with which the line was connected, was accomplished, and, moreover, did not become an integral part of the property of said mine and could be removed at any time without injury to the premises to which it was affixed. (Civ. Code, sec. 1019.)

Nor do we think the pipe-line was appurtenant to or a fixture of the Cooley properties. It is to be conceded that the grant of the right of way for the pipe-line by M. D. Cooley over and across the Cooley properties, having been made subsequent to the time that M. D. Cooley conveyed all his right, title, and interest in and to said properties to his wife, was apparently without legal force, it not appearing that, in making the grant, he was acting under due authority from his wife. But it may be assumed, from the fact that the pipe-line was allowed to be laid across Mrs. Cooley's properties and was so maintained until the pipe-line was sold by the Ocean Star Company to Kohler and Olson, that the grant of the right of way over her properties for the pipe-line by her husband was acquiesced in by her, and that, therefore, the same was so constructed and maintained under a license from both Mrs. Cooley and her husband. Nor does the provision in the option agreement that failure by the Ocean Star Mining Company to pay the stipulated sum for the Ocean Star mine at or within the specified time shall operate to forfeit said option "and all rights thereunder, etc.," give Mrs. Cooley title to the pipe-line of which there is no specific mention in the option. There could be no forfeiture of the title to property which she did not own. That provision obviously was meant and intended only to work a forfeiture of the option to purchase the quartz mine at the price specified in the option.

But, obviously, the ownership is somewhere or in some person or persons, and it is our conclusion, after a painstaking examination of the evidence in the record before us, that originally the pipe-line was the property of the Ocean Star Mining Company, and that the plaintiff in this action was the owner, by virtue of the conveyance from Fontz to her, above mentioned, at the time of the seizure and sale of the pipe-line under the execution issued in the case of *Hunt* v. *N. M. Melrose*, only of an undivided one-half interest in said property so taken and sold.

N. M. Melrose testified that he constructed the pipe-line solely for the purpose of installing power for the Ocean Star mine, which was being operated by the Ocean Star Mining Company, and that the pipe-line was used exclusively for that purpose. The pipe-line, therefore, if appurtenant to or a fixture of any other property at all, was to or of the Ocean Star mine. But, as before suggested, it is reasonably clear that the pipe-line was established and maintained either by N. M. Melrose or the Ocean Star Mining Company over and across the Cooley properties, which, as seen, included the Ocean Star mine (sometimes known as the German mine) under a license from the Cooley's, and that the pipe-line was the property of, and so regarded by all the parties, either N. M. Melrose or the Ocean Star Mining Company. And now we come to consider evidence of singular significance upon the proposition of the original ownership of the pipe-line. N. M. Melrose testified, it is true, that he constructed the pipe-line at his own expense and that the line belonged to him; but he further testified that the pipe and the other materials used in installing the pipe-line were ordered in the name of the Ocean Star Mining Company and that it was by the latter's checks that all bills incurred in the construction of the pipe-line were paid. As above shown, the pipe-line and the water rights with which it was connected were conveyed to Kohler and Olson by the Ocean Star Mining Company, "per N. M. Melrose, Pres. & Gen'l Mngr.—A. Perry, Sect. & Treasurer, Vice-Pres." Kohler and Olson sold to Fontz, who, as seen, conveyed an undivided one-half interest to the plaintiff. N. M. Melrose

testified, it is also true, that he caused the Ocean Star Mining Company to order the materials for the pipe-line and to pay therefor with its checks as a matter of convenience and upon the assumption that the order would be the more readily filled by ordering through that channel, but that he reimbursed out of his own private funds the company for the money paid by it for the materials.

It is not, of course, within the province of this court to determine the credibility of the witnesses, and, indeed, it is not requisite for us to essay that task here to show that the title acquired by Kohler and Olson to the pipe-line through the conveyance by the Ocean Star Mining Company and consequently the title of Fontz to the pipe-line were legally impregnable. It may first be observed that if it be true that N. M. Melrose and the plaintiff honestly believed that the ownership of the pipe-line was in him and that he conveyed it to his wife, the plaintiff herein, by virtue of his conveyance of the Missouri placer properties to the latter, it is a singularly strange circumstance that the plaintiff should have conceived it to be necessary to take a conveyance of one-half of the property from Fontz. We may assume that N. M. Melrose knew of the Fontz conveyance, since it was to his own wife. Mrs. Melrose, the plaintiff, was not a witness in the case and N. M. Melrose did not attempt to explain the reason for the Fontz conveyance, so we are in the dark as to the purpose of that transaction, except in so far as we may be furnished light upon the circumstance by N. M. Melrose's testimony to which we have referred and inferences which may reasonably be educed therefrom. It is also worthy of note that the record does not show that Mrs. Cooley ever made any objection to the transfer of the pipe-line by the Ocean Star Mining Company to Kohler and Olson. But, be that as it may, we are justified in concluding that the conveyance of the pipe-line to Kohler and Olson by N. M. Melrose, as the manager of the Ocean Star Mining Company, acting for and in behalf of said company, had the effect of vesting in the said grantees a perfect title to the pipe-line, even though said Melrose and not the said company was then the actual owner of the property, since it is unquestionably true

that Melrose, having taken part in the making of said conveyance and thereby impliedly at least assured the company's title to the pipe-line, is forever estopped from setting up his own ownership of the property so conveyed. No one would be found to say that, had N. M. Melrose undertaken to have the Ocean Star's conveyance to Kohler and Olson set aside solely on the ground that he was the real owner of the property so conveyed, his complaint would not, under the circumstances, have fallen under a plea of estoppel.

It follows from the foregoing views that the present record shows that the plaintiff is the owner of an undivided interest only in the pipe-line in controversy.

[1] The trial was had upon the theory that plaintiff was the sole owner of the entire pipe-line system and the pipe, flume, etc. This is shown by the refusal of the court to give a certain instruction, preferred by the defendants. The jury, we may, therefore, assume, in reaching their conclusion as to the amount of damages sustained by the plaintiff, considered the damage done to all the pipe and other essential concomitant property. The judgment will, consequently, have to be reversed.

We are not required herein to say who is or may be the owner of the other half of the pipe-line. Nor are we prepared to say whether another trial may not develop competent evidence showing that plaintiff was at some time, either by her own act or in some other legal way, divested of her title to her interest in the pipe-line prior to its seizure and sale under the execution referred to. It is sufficient for us to be convinced, as we are convinced, that, according to the present record, she is entitled to recover only such damages, both compensatory and punitive, if it be shown that the injury was done maliciously, as may be just for any injury done to her one-half interest, and no more, in the pipe-line in dispute.

We do not regard it necessary to review elaborately the objection preliminarily urged by counsel for respondent, that the bill of exceptions was not settled within the time prescribed by law, and is, therefore, not legally before this court, and as a result there is here no record subject to review. It is sufficient to say that we think that the trial

court's order relieving the defendants from the consequences of their delay in bringing the bill to settlement represented, on the showing made by them, the exercise only of a sound and just discretion.

The judgment is reversed and the cause remanded.

Prewett, P. J., *pro tem.*, and Burnett, J., concurred.