[Civ. No. 13293.   First Dist., Div. One.   Feb. 24, 1947.]

GEORGE J. RAZZANO, Respondent, v. E. A. KENT, Appellant.

Hardin, Rank, Meltzer & Fletcher, Lawrence S. Fletcher and Rowan Hardin for Appellant.

Nat Brown and C. H. Hogan for Respondent.

SCHOTTKY, J. pro tem.—This is an appeal from a judgment in favor of plaintiff and respondent for damages in the sum of $2,112 and from the order denying defendant's motion for a new trial.

The complaint, which was filed on June 25, 1941, alleged that "the plaintiff is and for more than one year last past has been the lessee of and as such in possession of . . ." certain real property commonly known as Montezuma Flat in Tuolumne County, which land had been leased for the purpose of dredging for gold; that he dredged said land for a year prior to May 1, 1941, at a substantial profit to himself; that "defendant does and for more than one year last past has carried on dredging operations on property adjacent to and above" plaintiff's property; that such operations of defendant caused a mass of muddy water to flow into the pond used by plaintiff in carrying on his operations to such an extent that on May 1, 1941, it became impossible for plaintiff to continue his dredging operations profitably; that on May 1, 1941, defendant, without plaintiff's consent, constructed a dirt dam on the lower end of plaintiff's leasehold across the swale through which the muddy waters were accustomed to flow into the lands below and that this caused the muddy water to be impounded on and to cover a substantial part of plaintiff's leasehold, rendering it impossible for plaintiff to carry on his dredging operations on that portion of the property; that at the time plaintiff was forced to cease dredging operations there remained on the property covered by his lease approximately 100,000 square yards of gravel to be dredged, the average gold content of which was 25 cents per square yard, and that by reason of defendant's wrongful acts plaintiff was damaged in the sum of $10,000.

In his answer defendant did not deny the allegation that plaintiff was the lessee of the property, but did deny practically all of the other material allegations of the complaint.

The trial court found in accordance with the allegations of plaintiff's complaint except as to the allegations concerning damages. In this respect the court found: "At the time when plaintiff was forced to abandon his gold dredging operations on his leasehold by the acts of the defendant which resulted in the flooding of plaintiff's leasehold and his dredging operations with muddy water and slime from defendant's mining operations to such extent that plaintiff could no longer profitably operate, the plaintiff had left on his leasehold a substantial amount of gold bearing gravel which he could and would have dredged and mined at a substantial profit to himself before the expiration of his lease, if he had not been prevented from doing so by the wrongful acts of the defend-

ant. From such continued and completed mining operations the plaintiff would have realized for himself a net profit of not less than $2,112.00, and by reason of the wrongful acts of the defendant and as the proximate result of such acts, the plaintiff has been and is damaged in the sum of $2,112.00.''

Appellant does not attack the sufficiency of the evidence to sustain a judgment in favor of respondent, nor does he contend that the evidence is insufficient to show that the acts of appellant caused damage to the leasehold interest in the sum awarded by the court. Appellant does, however, seek a reversal of the judgment upon several grounds which we shall discuss in the order of their statement in appellant's opening brief.

The first ground relied upon by appellant is ''that the plaintiff, a co-tenant, cannot recover the total damages done to the leasehold interest when the undisputed record shows him to be the owner of only a one-half interest therein.'' Appellant points out that in the early part of the trial respondent introduced into evidence a written lease between one Joe Sanguinetti and respondent and C. J. Karr, and states that no further evidence was introduced as to whether C. J. Karr had sold or assigned his interest to respondent, and appellant contends that the record therefore shows that respondent and C. J. Karr were cotenants and that C. J. Karr is still the owner of a one-half interest in the lease. Appellant points out also that there are no findings as to the interest of Karr, nor do the findings show whether the judgment represented all or only one-half of the damages suffered by the leasehold premises, and appellant argues that the findings are insufficient and uncertain and that the judgment must therefore be reversed.

In support of this contention appellant cites the cases of *Melrose* v. *Cooley,* 50 Cal.App. 768 [196 P. 105], and *Muller* v. *Boggs,* 25 Cal. 175, in which the rule is laid down that while a tenant may commence in his own name alone an action to recover possession of the leasehold premises from a stranger, he cannot recover the total damages for the loss of any profits, but only for that proportion thereof which corresponds to his interest in the land.

The Melrose case, *supra,* was one where plaintiff brought an action for damages for trespass and conversion of a pipe line. The case was tried on the theory that plaintiff was the

sole owner of such pipe line. The appellate court there stated in effect that the record showed the plaintiff was only the owner of an undivided interest in the said pipe line and therefore was entitled only to such damages, both compensatory and punitive, as may be just for any injury done to her one-half interest and no more. Since the jury had awarded her damages on the theory that she was the sole owner, it was therefore necessary to reverse the judgment.

The Muller case, *supra,* was one where the plaintiff was found to be the owner of only an undivided three-fourths interest in certain real property. The Supreme Court therefore held that the plaintiff was entitled to recover only three-fourths of the rents and profits and that the judgment being for the full amount was therefore erroneous and had to be reversed. Since, however, the plaintiff was willing to remit one-fourth of the judgment, the court modified the judgment in accordance with such offer and affirmed it. (See, also, 7 Cal.Jur. 371, § 39.)

It would seem to be settled law in this state that a cotenant cannot recover the total damages caused by a trespass to the leasehold, but may only recover for his proportionate interest. So in view of the fact that it is clear from the record in the instant case that the amount awarded respondent was for the total damages to the leasehold, it would be necessary for us to reverse the judgment if it were also clear from the record that respondent was not the owner of the entire leasehold interest. The trial court found that *"the plaintiff* [respondent], *as lessee, was in possession"* of the leased premises. (Emphasis added.) This finding is in accordance with a similar allegation in the complaint, which allegation was admitted by failure to deny it by the answer. It is clear from the evidence that respondent was regarded by all of the parties as the owner of the lease. The lease as executed on October 13, 1939, twenty months before the commencement of the action, was between Sanguinetti and respondent and C. J. Karr, and while there is no direct evidence as to what Karr's interest was, or that his interest had been assigned to respondent, yet it is fairly inferable from the evidence that such was the fact. Counsel for appellant cross-examined respondent at great length and produced many witnesses, but he made no statement nor asked any question during the entire trial tending in any way to dispute respondent's ownership of the entire leasehold interest.

■ Furthermore, if appellant desired to question the fact of respondent's ownership of the entire leasehold interest he should have done so at the trial and should have moved to amend his answer accordingly, as the lease was introduced in evidence early in the trial. A party is bound by the admissions of his own pleadings.

■ In 21 California Jurisprudence 155, section 106, it is stated: "Except in actions for divorce, 'every material allegation of the complaint, not controverted by the answer, must, for the purposes of the action, be taken as true.' In other words, like a default, a failure to deny a material averment in a complaint is an admission of the truth of the fact stated, which is conclusive against the pleader, and obviates the need for introducing evidence and making a finding upon the fact involved. Indeed, as a fact so admitted is not in issue, evidence tending either to establish, modify or contradict it should not be received or considered, and a finding contradictory thereto should be disregarded. The rule is the same where a denial is insufficient. . . ."

In *Bloss* v. *Rahilly,* 16 Cal.2d 70, at page 77 [104 P.2d 1049], the court stated: "Defendants further contend that, 'An appropriator's right to take foreign water may not be quieted where at the time of his application and the issuance of the permit thereon the water had no existence.' They cite and rely upon section 1 (d) of the act. While we believe there was sufficient evidence to show the existence of the foreign water in the creek at the time of the application, we are of the opinion that defendants are in no position to raise the point on this appeal. Plaintiff alleged in his complaint the existence of said foreign water in the creek 'since 1927.' Defendants admitted in their answers the existence of said foreign water in the creek 'since 1927' and affirmatively alleged its existence therein 'since many years prior to 1927.' It is therefore a sufficient answer to this contention of defendants to state that said contention is based upon a statement of fact which is contrary to the admissions and allegations found in their own pleadings." (See, also, *United Air Services, Ltd.* v. *Sampson,* 30 Cal.App.2d 135 [86 P.2d 366]; *Beatty* v. *Pacific States S. & L. Co.,* 4 Cal.App.2d 692 [41 P.2d 378].)

Appellant's second and third grounds for reversal of the judgment are: "The court erred in granting the plaintiff as part of his damages the loss of future profits occurring after

the suit was filed which resulted from the act of the defendant in committing the temporary continuing trespass in allowing the muddy water to run down the natural creek bed'' and ''The court erred in awarding any damages for loss of future profits after May 1, 1941 which was caused by the muddy water running down the natural creek bed as there is no evidence in the record that the trespass continued on after May 1, 1941 to June 25, 1941 when suit was filed or on to October 23, 1941 when the lease terminated.'' These contentions are discussed together by appellant and we shall do likewise.

The two acts of trespass set forth in the complaint and findings are that on or about the first day of May, 1941, the muddy water flowed from defendant's mining operations through the plaintiff's leasehold and into plaintiff's dredging pond, causing the plaintiff to discontinue his dredging operations in that portion of the leasehold; and that on or about the first day of May, 1941, the defendant constructed a dam which impounded water over a portion of the leasehold making it impossible for plaintiff to dredge that portion thereof.

As hereinbefore set forth, respondent in his complaint alleged, and the trial court found, that it was on or about May 1, 1941, that the acts of appellant rendered it impossible for him to continue his dredging operations.

It is appellant's contention that the trespass caused by allowing the muddy water from his operations to drain into respondent's pond was in the nature of an abatable temporary trespass and therefore the respondent was entitled only to recover damages as to this injury for the period from May 1, 1941, until June 25, 1941, the date the suit was filed. Appellant argues that in the case of an abatable temporary trespass the respondent can recover only *past* damages since the continuing trespass gives rise to new causes of action for each day the trespass continues, and appellant cites the following authorities in support of this well-established legal proposition: *Kafka* v. *Bozio*, 191 Cal. 746 [218 P. 753, 29 A.L.R. 833]; *Lindberg* v. *Linder*, 133 Cal.App. 213 [23 P.2d 842]; 25 C.J.S. p. 498-9; 17 C.J. p. 766. Appellant then asserts that if respondent had waited until the termination of his lease on October 13, 1941, he would then have been entitled to recover for all the damages he might have suffered, but that because the trial court allowed plaintiff to recover for the loss of all his prospective profits the judgment must there-

fore be reversed. The appellant also contends that even if it be assumed that the respondent could recover prospective damages, still it was incumbent upon the respondent to prove the continuance of the temporary trespass from May 1, 1941, until the time of the expiration of the lease. The appellant argues that the record and findings are silent on this point. The appellant concludes, therefore, that the respondent is not entitled even to past damages, that is, from May 1, 1941, until the date of the filing of the suit, to say nothing of prospective damages.

It is true that here the action was brought before the termination of the lease and therefore before expiration of the time in which plaintiff had to dredge the property. However, here there are other circumstances present that would seem to distinguish the instant case from the rules contended for by appellant. Here the evidence shows and the trial court found that by reason of defendant's wrongful acts, the plaintiff was forced to discontinue and abandon his dredging operations on May 1, 1941. In this respect the plaintiff testified in effect that he began his operations in November, 1939; that he had plenty of water all the time until defendant Kent began his upper operations in 1940; that then mud and silt began to run into his ditch; that he could not get water in any other way to operate on the high ground; that he complained to defendant's employees but nothing was done directly to stop this; that he first complained in June or July of 1940. Plaintiff further testified that the mud continued to flow into the pond until it became so thick in May of 1941, that he could no longer operate; that the acts of defendant caused him to quit his operations and to move his dredger out; that he moved his equipment to another operation at Wallace, Calaveras County; that it cost him $500 to move the equipment, plus expenses for assemblage at the other site. It would seem, therefore, that the wrongful act was completed as of May 1, 1941, when the plaintiff was forced to abandon his dredging operations and move his equipment, and that respondent was entitled to recover for the loss of all prospective profits.

That a party can recover prospective profits is well settled by the case of *Natural Soda Products Co.* v. *City of Los Angeles,* 23 Cal.2d 193 [143 P.2d 12]. In that case the plaintiff was in the business of extracting natural soda prod-

ucts from the bed of Owens Lake. The lake had dried up due to defendant's diversion of the water of the Owens River. Plaintiff erected a plant for its purposes and its operation depended upon the continuation of the diversion by defendant. On February 6, 1937, defendant allowed a large amount of water to flow into the lake and continued to do so intermittently until July 1, 1937. The plaintiff was unable to resume operations until October, 1937. Plaintiff's action for damages was filed thereafter. ■ There the court stated in part, at page 199: "In addition to other items, plaintiff was awarded damages for loss of profits, which defendant contends was not proved with certainty. The award of damages for loss of profits depends upon whether there is a satisfactory basis for estimating what the probable earnings would have been had there been no tort. If no such basis exists, as in cases where the establishment of a business is prevented, it may be necessary to deny such recovery. [citing cases.] If, however, there has been operating experience sufficient to permit a reasonable estimate of probable income and expense, damages for loss of prospective profits are awarded. [citing cases.]"

■ Appellant asserts further that assuming that respondent is entitled to recover prospective damages, he cannot do so in this case without proving that the nuisance actually continued during the period for which he recovers the loss of profits. We believe that there is sufficient evidence in the record to show the continuance of the trespasses of appellant.

■ As to the flooded portions of respondent's leasehold caused by the erection of the dam, the plaintiff testified that even if the dam had been blasted out at the time of its discovery, that is, about May, 1941, he still would have been unable to have mined it immediately as there would be too much mud left behind; that it would not have washed out until way later in the rainy season. Therefore, as to this property the plaintiff was clearly justified in abandoning the operation and the wrong was complete as of May 1, 1941; and the appellant makes no contention to the contrary.

As to the wrong of defendant in allowing mud from his upper operation to flow into plaintiff's ditch and thence into his pond, the evidence shows and the court found that this situation existed for a year prior to May 1, 1941. The plaintiff testified that the only reason he operated until the spring

of 1941, was that during the winter months he had plenty of run-off water, that is, surface rain waters, and therefore the mud did not bother him too much. It would thus appear that as long as Kent maintained his operations on the upper property, the mud and silt would continue to flow into plaintiff's ditch and pond in the absence of affirmative evidence to the contrary. In the reporter's transcript in relation to testimony given by the defendant Kent the following appears: ''Q. After the water passed from your dredging operation and passed down through the Razzano property and passed down to the property you were dredging below, did you have any trouble in operating your dredger, from that water that came through the two dredging operations? A. No, we operated for a year in there, from December, 1940, to, I think it was, pretty nearly a year, October or November, 1941.''

It would seem, therefore, that it can be inferred that water continued to run down from defendant's upper operation at least until November, 1941, as it did not bother defendant's lower operation during this time. This being so, it could also be inferred that the same mud condition during this time would prevail as to the respondent in the absence of evidence to the contrary, and therefore that in any event the respondent would have been unable to operate his dredge during this time. Thus it would appear that there is sufficient evidence of the continuance of this alleged trespass until October of 1941. It is therefore difficult to see how the appellant can maintain that there is no evidence of such continuance, if such proof is actually required under the circumstances of this case.

As we have hereinbefore pointed out, the record supports the court's findings that on May 1, 1941, respondent had an established gold dredging enterprise on the leasehold which he was operating at a substantial profit to himself, and that his business was destroyed by the wrongful acts of appellant in so flooding respondent's dredging operations and leasehold as to make it impossible for him to further carry on said operations. Under such circumstances we do not believe that appellant's contention that in order to recover his total damages respondent was required to wait until the lease expired before filing suit is supported by either reason or authority.

In McCormick on Damages, page 51, section 13, it is stated: ''This practice of remitting the plaintiff to a later suit for the continuance of harmful conduct after the commencement of the action and before the trial, while a logical application

of the theory of successive rights of action for successive wrongs, has the obviously inconvenient result of increasing litigation over what may broadly be regarded as a single controversy. In equity, when suits for injunction were brought to restrain the continuance of a nuisance or like continuing injury, this consideration of convenience prevailed. These courts, in order to terminate the entire controversy in one suit, will, in the injunction suit, give as an incident thereto compensation for the loss or injury already suffered, and, carrying out the same policy, will allow recovery for the harm or damage sustained through the continuance of the wrong down to the time of the final disposition of the case.

"The directness and practicality of this result has led in several jurisdictions to the acceptance of this chancery rule allowing damages for a continuing wrong down to the time of trial, as a general rule for all actions, whether legal or equitable. This sensible alteration in the common-law practice will doubtless, in the fullness of time, be adopted, by statute or rule of court, in the other states."

The California case of *Hicks* v. *Drew,* 117 Cal. 305 [49 P. 189], and Civil Code, section 3283 are cited by McCormick in support.

Section 3283 of the Civil Code states: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future."

In *Hicks* v. *Drew, supra,* the court said at pages 311-312: "The trial judge instructed the jury as follows: 'No damage can be recovered in this action for injury to plaintiff's feelings, but only such pecuniary damage as accrued to her property by reason of the maintenance by defendant of a bulkhead at the foot of California street, and of such damage she can recover only so much as accrued to her before the commencement of this suit and after the twenty-ninth day of November, 1891.' Section 3283 of the Civil Code provides: 'Damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof.' By this section of the code, plaintiff was entitled to recover damages suffered subsequent to the filing of the complaint, and for this reason the instruction given is unsound as a proposition of law. Neither was a supplemental pleading necessary to support such a recovery. This court said in *McLennan* v. *Ohmen,* 75 Cal. 558 [17 P. 687]: 'Besides, plaintiff was entitled, under his origi-

nal complaint, to recover damages for detriment resulting after the commencement of his action.' In line with the legal principle declared by the aforesaid section of the code, see *Morgan* v. *Reynolds*, 1 Mont. 163; Greenleaf on Evidence, sec. 268a.'' To the same effect see *Berry* v. *Bank of Bakersfield*, 177 Cal. 206, 211 [170 P. 415]; *Joerger* v. *Pacific Gas & Electric Co.*, 207 Cal. 8, 27 [276 P. 1017].

Appellant makes a final contention that the court included in the total judgment awarded to respondent an indefinite amount of damages for the construction of the dam, but we find nothing in the findings or judgment to justify this statement. The court found that but for the wrongful acts of appellant respondent would have a profit of $2,112 and the judgment was for that amount.

In view of the foregoing, we conclude that the judgment should be and is hereby affirmed. The appeal from the order denying appellant's motion for a new trial is dismissed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 26, 1947, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1947.