

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

October 22, 1968

Honorable Robert S. Calvert              Opinion No. M- 298
Comptroller of Public Accounts
Austin, Texas                            Re:   Whether rental pay-
                                               ments made for pipe-
                                               lines located in an
                                               open easement are
                                               subject to the Texas
Dear Mr. Calvert:                              Sales Tax.

        You have requested our opinion concerning the tax-
ability under the Texas Limited Sales, Excise and Use Tax
Act of a lease transaction in which Lessor let, leased,
and demised a pipeline to Lessee.  The pipeline in question
is one of several such pipes running through one of Lessor's
two shafts.  These two shafts are connected by a tunnel
which runs under and across the Houston Ship Channel.  In a
supplemental letter you have further requested that we
render our opinion in such a manner as to cover other exist-
ing factual situations with which you are confronted, and
they will be discussed during the course of this opinion to
provide legal guidelines which will enable your office to
dispose of such matters.

        The pertinent part of this act, Texas Taxation-
General Article 20.02 (Supplement 1967) (hereinafter cited
by article number) states:

                "There shall be imposed a limited
        sales tax at the rate of two per cent
        (2%) on the receipts from the sale at
        retail of all tangible personal property
        within the State."

        The word "sale" as used in this statute encompasses
the words lease or rental:

-1437-

"(1)  'Sale' means and includes any transfer of title or possession, or segregation in contemplation of transfer of title of possession, exchange, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration." (Emphasis added.)  Article 20.01(K).

And lease price or rental price have been defined in Article 20.01(H) as follows:

"(2)  'Rental Price' or 'Lease Price' means the total amount for which tangible personal property is rented or leased, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following:

"(a)  The cost of the tangible personal property rented or leased.

"(b)  The cost of material used, labor or service cost, interest charged, losses, or any other expenses.

"(c)  The cost of transportation of tangible personal property at any time.

"(2)  The total amount for which tangible personal property is rented or leased includes all of the following:

"(a)  Any services which are a part of the lease or rental.

"(b)  Any amount for which credit is given to the lessee or rentee by the lessor or rentor."

In the lease you have submitted to us, the lessor in Article IV stated, "It is understood that the Lessor does not represent or warrant that it has good title to the right or easement to construct and or maintain said tunnel" into which the pipeline that is leased is contained.  It is unimportant, for sales tax purposes, whether the lessor avows or disavows true title to the lessee, when in fact lessor's title has not been challenged and lessee continues to pay an agreed rental.  As between this lessor and lessee, it would appear that title, or at least the power, if not the right to lease, is understood to lay with the lessor, since possession of property is prima facie evidence of title to it.  <u>Continental Credit Corporation v. Norman</u>, 303 S.W.2d 449 (Tex. Civ. App. 1957, error ref., n.r.e.)

It is quite apparent from a perusal of these relevant statutes that where there is a transfer of possession of tangible personalty for value, a fortiori a rental or lease, a taxable incident has occurred.  This office, in Attorney General Opinion No. M-165 (1967), announced this same position, although reaching a non-taxable result due to the novel fact situation presented.  There the telephone company and the utility company had jointly agreed to a mutual sharing of their respective wooden poles.  Such an arrangement prevented each company from having to erect duplicate poles in the same location which resulted in a considerable monetary savings to each. The parties jointly called this arrangement a "pole-rental". In the course of the opinion, we held that "there must be more than the denomination by the parties that such transaction be a rental.  <u>There must be a transfer of possession.</u>  . . ." (Emphasis added.)  No transfer of possession was shown in that case on which to impose a tax liability, and the telephone poles there involved were considered to be a part of the realty and not tangible personalty.

In the present case, however, the necessary transfer of possession did occur.  Here, in the lease entered into

November 19, 1964, between the lessor Pipe Line Company and the lessee Pipe Line Company, the transfer of possession was clearly illustrated in the introductory "whereas provision" of that lease:

> "NOW, THEREFORE, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, paid said lessor by said lessee, the receipt of which is hereby acknowledged, said lessor does hereby let, lease, and demise unto said lessee, for the term of five (5) years from the 13th day of April, 1965, one (1) eight inch (8") welded pipeline No. 4 into and through said shafts and tunnel. . . ."

It is also ascertainable in Article IX of this lease:

> "It is expressly understood and agreed between the parties hereto that any failure or default on the part of the lessee to strictly keep and perform each and every covenant, condition, and limitation herein contained and set forth shall forfeit all rights, privileges and options of said lessee hereunder, and that upon a declaration of such forfeiture by said lessor, <u>it shall be entitled to take possession of said line leased to said Lessee and oust said Lessee from any further possession thereof or right to occupy said line or lines in said shafts and tunnel thereafter, and in such event Lessee hereby agrees to deliver the peaceable possession of said pipeline to Lessor.</u>" (Emphasis added.)

Since the necessary transfer of possession took place, the only relevant remaining question is whether the one eight inch welded pipeline in issue is tangible personalty or is a fixture adjunct to the realty. This question presents two basic issues: first, whether an easement is realty; and second, whether a pipeline is personalty or a fixture and hence part of the realty.

Adverting to the first issue, it has long been held in Texas that an easement is an interest in land and therefore is realty. Burgess v. City and County of Dallas Levee Improvement District, 155 S.W.2d 402, 405 (Tex. Civ. App. 1941, error ref'd w.o.m.). Therefore as long as the owner and lessor of an easement, be it a public or private concern, leases a part of its interest in the land to a lessee for the purpose of installing a pipeline, it is of little consequence that the lessor is not also the fee owner of the real estate. For the lessor-easement-holder is no less an owner of realty by not also possessing fee title. See West v. Giesen 242 S.W. 312 (Tex. Civ. App. 1922, error ref'd).

Therefore, those chattels which are affixed to the easement which meet the test of fixtures, later discussed, become a part of the realty for all purposes. However, the relationship of the parties involved, e.g., landlord-tenant or mortgagor-mortgagee, must be carefully scrutinized before a final determination of the classification of the chattel may be made. See 25 Tex. Jur. 2d Fixtures, Secs. 17-31.

Turning to the second issue propounded in this question, this office is unable to determine, as a matter of law, the proper classification of pipelines without a full development and presentation of the pertinent facts in this case. No decision by the Texas courts has been found which would lend credence to a determination that pipelines are either fixtures or personalty. Also jurisdictions outside our own lend little help, being divided on the resolution of this question.[1]

---

1.        Many jurisdictions have held that pipelines are fixtures. See, e.g., California Domestic Water Co. v. Los Angeles County, 10 Cal.App. 185, 101 Pac. 547 (1909); Russell v. City of Rome, 98 Ga.App. 653, 106 S.E.2d 339 (1958); Paris v. Norway Water Co., 85 Me. 330, 27 Atl. 143 (1893); State Tidewater Pipe Line Co., Prosecutor v. Berry, 52 N.J.L. 308, 19 Atl. 665 (1890), aff'd, 53 N.J.L. 212, 21 Atl. 490 (1891); Providence Gas Co. v. Thurber,

Little help is gained from studying the divergent treatment given to property other than pipelines.[2]

It should be noted, however, that a former Attorney General, when faced with a similar issue, decided, based upon the facts presented, that the pipeline there in question was not a fixture and hence was personalty. Attorney General No. 0-5268 (1943). Unfortunately, this decision has since been frequently misinterpreted as announcing that the only test for determining the status of property was whether a right of removal was preserved to the lessee.

---

2 R.I. 15, 55 Am. Dec. 621 (1851).

On the other hand, some jurisdictions have taken the contrary position assigning pipelines the status of personalty. See, e.g., Melrose v. Cooley, 50 Cal.App. 768, 196 P. 105 (1920); Shaw v. Welch, 136 Kan. 736, 18 P. 2d 189, 190 (1933); Yellowstone Pipe Line Co. v. State Board of Equalization, 138 Mt. 603, 358 P.2d 55, 68 (1960); cf. Crabb v. Keystone Pipe & Supply Co., 177 S.W.2d 989 (Tex. Civ. App. 1944, error ref'd). Also in Marco Co. Inc. v. State, 168 S.W.2d 510 (Tex. Civ. App. 1943, error ref'd) the court interpreted Tex. Rev. Civ. Stat. Ann. art 7146 (1961) as not necessarily making appurtenances under the soil fixtures.

2.        For a full treatment of the Texas cases see 25 Tex.Jr.2d Fixtures, Secs. 11-14 (1961). For other jurisdictions see, e.g., In re Lido Beach Sewage Collection District, 40 Misc. 2d 384, 243 N.Y.S.2d 223, 225-26 (Nasau County Ct. 1963) (holding sewers are fixtures); Indianola County Club v. Fireman's Ins. Co., 250 Iowa 1, 92 N.W.2d 402, 404 (1958) (holding that a buried electric cable is a fixture).

Albeit, the right of removal was an important factor in that fact situation, it cannot be regarded as the only test or the paramount one. Indeed, the right of removal is a factor to be considered in determining the status of property,[3] but it must be applied in conjunction with the other determinative factors. See Van Valkenburg v. Ford, 207 S.W. 405 (Tex. Civ. App. 1918), aff'd, 228 S.W. 194 (Tex. Comm'n. App. 1921, opinion adopted).

As between the two immediate parties to the contract, in the absence of any other evidence, the right of removal may be determinative; but it is now well settled that such a determination will not act to the detriment of a third party (or a taxing authority):

> "'/W /hatever is affixed to the soil belongs to the soil. . . .' In some instances it is difficult to determine just whether a fixture has become a part of the realty, or whether it retains its original character as personalty; as for instance, where it is questionable whether annexation is of a permanent character or not. In such cases where the true status of the property is doubtful, it would perhaps be permissible for the parties by agreement to impress it with the character of personalty so long as the agreement was made in good faith, and not for the purpose of evading or contravening the statutory provision /or applicable tax /. . . ."

---

3.    In furtherance of this test, especially part two, it is stated at 25 Tex.Jur.2d Fixtures, Sec. 7 at page 339:

> "Chattels lose their identity as personal property where they are so annexed to the realty that they cannot be detached without damage to the freehold, or without destroying the usefulness of the property to which they are annexed. Conversely, the things affixed retain their character as personalty where they can be removed with slight or no injury to the realty, or to themselves."

> Ginner's Mutual Underwriters v. Wiley
> & House, 197 S.W. 629, 632 (Tex.Civ.
> App. 1912, no writ); see Van Valkenburg
> v. Ford, supra; Phillips v. Newsome,
> 179 S.W. 1123, 1124 (Tex. Civ. App.
> 1915, no writ); 1 Thompson, Real Property
> 381 (1964).

This office, therefore, believes that the answer to whether a chattel is personalty or realty should be gleaned not merely from the contractual presence of a right of removal but more importantly should be gleaned from the classical tripartite approach of Hutchins v. Masterson & Street, Assignees & C., 46 Tex. 551 (1877):

> "It is said, the weight of modern authorities establish the doctrine that the true criterion for determing whether a chattel has become an immovable fixture, consists in the united application of the following tests:

>> "1st.  Has there been a real or constructive annexation of the article in question to realty?

>> "2nd.  Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

>> "3rd.  Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold? - - /a_7 this intention being inferable from the nature of the article, /b_7 the relation and situation of the parties interested, /c_7 the policy of the law in respect thereto, /d_7 the mode of annexation and purpose or use for which the annexation is made."

This test has been numerously approved and cited in this State. E.g., Carter v. Straus - Frank Company, 297 S.W.2d 195, 197 (Tex. Civ. App. 1956, no writ.); Public Service Company v. Smith, 31 S.W.2d 472 (Tex. Civ. App. 1929, error dism'd).

In Hutchins, at page 554, the court went on to say that of the three parts there presented, preeminence has been given to the intent of the parties. In addition to the first two parts of the Hutchin's test, the character of the property should also be determined from the intention of the parties (part three of the test) which may be ascertained from deciding whether the pipeline has: e.g., (1) a long useful life; (2) a relatively high initial investment which can only be recouped from prolonged usage of the pipeline; (3) an appreciable amount of cost and labor to insure a long useful life (e.g., a non-corrosive coating that will last many years); (4) whether the pipeline increases the property value for ad valorem tax purposes; (5) and after the pipeline is no longer used, whether it is left in the ground or extracted.

Therefore, it will be necessary in each instance for the Comptroller, by applying the applicable legal guidelines presented, to make a factual determination of the true character of each pipeline in issue; and where it is found to be personalty under the test imposed, a proper assessment should be made where the pipeline is the subject of a taxable rental or sale.

## S U M M A R Y

The determination whether the rental of a pipeline is subject to the Limited Sales, Excise and Use Tax and is therefore personalty, or whether the rental of a pipeline is not subject to this tax and is therefore a fixture adjunct to the realty, is a fact ques-

tion which must be answered in the
first instance by the Comptroller of
Public Accounts by employing the
legal guidelines herein stated.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Alvin L. Zimmerman
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
Arthur Skibell
Bob Davis
R. D. Green
Rex White

A. J. Carubbi, Jr.
Executive Assistant