[Civ. No. 6986. First Appellate District, Division Two.—May 5, 1930.]

JOHN N. MAGGI, Respondent, v. PETER POMPA. Appellant.

Jas. F. Brennan, J. J. McMahon and P. J. Murphy for Appellant.

Daniel A. Ryan, Thos. C. Ryan, James R. Loofbourow and George F. Snyder for Respondent.

NOURSE, P. J.—Plaintiff sued for damages for injuries inflicted upon him by the defendant Cesena, a special police officer. The cause was tried before a jury and resulted in a verdict for $15,000 in favor of plaintiff. Defendant Pompa appeals upon typewritten transcripts.

At the request of one Tony Pompa the defendant Cesena was appointed a special police officer by the police commissioners of the city and county of San Francisco on November 13, 1923, and was assigned to beat No. 97. Prior to his appointment Cesena was examined and recommended to the police commissioners by Captain Layne, a captain in the reg-

ular police force assigned to the special duty of the supervision of patrol specials of the city and county. On December 10, 1923, the defendant Peter Pompa was appointed a patrol special. These special officers received their entire compensation from the property owners of the territory which they patrolled, but in this instance the defendant Pompa assumed the burden of collecting from the property owners and from these collections paid to Cesena a regular monthly salary of $125.

On the evening of October 31, 1925, while patrolling the beat assigned to him, Cesena attempted to place under arrest one Semenza on a charge of disturbing the peace. Semenza resisted arrest, a fight ensued, during which Cesena drew his gun and shot at Semenza. Semenza ran and Cesena took two other shots at him, one of which struck the plaintiff, who was an innocent bystander, causing the injuries which are the subject of the complaint.

On this appeal respondent's whole case rests upon the doctrine of *respondeat superior*. If the full relation of master and servant existed between Cesena and appellant at the time of the occurrence, then the appellant would be liable to the respondent for the injuries sustained by him because it is conceded that in attempting to make an arrest for a mere misdemeanor Cesena was not authorized to shoot at the offender and his act in so doing was, therefore, negligent. The precise relation of the parties is this: Both the appellant and Cesena were employees of the property owners for the special purpose of protecting their property and both were *quasi*-public officials charged with the duty of maintaining law and order under the rules of the board of police commissioners.

The question of the liability for the wrongful acts of those who occupy this dual relationship of special police officers commissioned by public officials has brought about a wide difference of opinion in the authorities. One line of cases holds that there can be no recovery against one who has procured the appointment of such a police officer and who pays him for his services, while the other line holds directly contrary. There seems to be, however, an agreement of the authorities that such officers are deemed to be *prima facie* public officers for whose wrongful acts the "employer" is not responsible unless it is shown that the latter has

directed the acts causing the injury or has personally co-operated therein. (18 R. C. L., p. 786.)

The rule in this state is given in *Redgate* v. *Southern Pac. Co.*, 24 Cal. App. 573, 581 [141 Pac. 1191, 1194], where it is said: "It has been frequently held, under statutes similar to the above quoted, that special officers appointed thereunder derive all their powers from the appointment made by the civil authorities, here by the governor of the state. The authority to make arrests, with which plaintiff was clothed, was in terms given by the statute and in no sense can be said to arise from the relation of master and servant, or principal and agent, existing between the special officer and the company at whose application he was commissioned; and the fact that he is 'to serve at the expense of such company' does not affect his status as that of a police officer. The rule of *respondeat superior* has no application where there is no evidence tending to show that the company was instrumental in causing the arrest or subsequent prosecution. The foregoing views are fully supported by the following cases, cited by appellant: *Adler* v. *White City Construction Co.*, 147 Ill. App. 20; *Samuel* v. *Wanamaker*, 107 App. Div. 433 [95 N. Y. Supp. 270]; *Hershey* v. *O'Neil*, 36 Fed. 168, under the New York statute; *Wells* v. *Washington Market Co.*, 19 App. D. C. [8 Mackey] 385; *Tolchester Beach Imp. Co.* v. *Steinmeier*, 72 Md. 313 [8 L. R. A. 46, 20 Atl. 188]." The same principle is carried through the cases relating to the responsibility of a public officer, such as officers of the regular police force, for the acts or omissions of subordinate members of the same force. Thus in *Michel* v. *Smith*, 188 Cal. 199, 201 [205 Pac. 113, 114], the Supreme Court, in holding that a sergeant of police was not responsible for the negligence of a member of his squad, said: "A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated therein. (23 Am. & Eng. Ency. of Law, 382; Story on Agency, sec. 319; *Robertson* v. *Sichel*, 127 U. S. 507–515, 32 L. Ed. 203, 8 Sup. Ct. Rep. 1286 [see, also, Rose's U. S. Notes].)"

In passing it is interesting to note that the court drew the distinction between "employments" of this nature and

the relation of a sheriff or constable to his deputies, saying: "The deputy is not the agent or servant of the sheriff but is his representative, and the sheriff is liable for his acts as if they had been done by himself." And so it was held that neither the chief of the police department nor the sergeant who had direct control over the patrolman who committed the acts complained of was responsible in damages for these acts "unless it can be shown that he had directed such acts or personally cooperated therein." (Page 203.)

In harmony with the rule of the Redgate case we find the text in 39 C. J., page 1273, section 1461, which reads: "Unless it is otherwise provided by statute, a private person or corporation is not responsible for the acts of a special police officer, appointed by public authority, but employed and paid by the private person or corporation, when the act complained of was performed in carrying out his duty as a public officer." In support of the text many cases are cited and then the writer follows with a statement of the contrary rule, to which he cites an equal number of cases. Thus, the California rule is followed in *Healey* v. *Lothrop*, 171 Mass. 263 [50 N. E. 540]; *Buman* v. *Michigan Cent. R. Co.*, 168 Mich. 651 [Ann. Cas. 1913D, 107, 134 N. W. 972]; *Pennsylvania R. Co.* v. *Kelly*, 177 Fed. 189 [30 L. R. A. (N. S.) 481]; *New York etc. R. Co.* v. *Fieback*, 87 Ohio St. 254 [43 L. R. A. (N. S.) 1164, 100 N. E. 889].

The application of the foregoing rule to the case at hand seems plain. The status of special police officers appointed by the police commissioners is fixed by the San Francisco charter, article VIII, chapter III, section 1, which provides that the board of police commissioners shall have power "4. At its discretion, upon the petition of any person, firm or corporation, to appoint, and at pleasure to remove, special police officers. Such officers shall be subject to all the rules and regulations of the board." The rules and regulations of the police department relating to special police officers were received in evidence. They divide such special officers into two classes—those appointed to regular beats were designated as "patrol specials," all others were known as "special officers." The defendant Cesena came under the designation of patrol special and as such was subject to rule 4, which reads in part that it shall be the duty of every

patrol special to see that the peace is kept and to prevent violation of the law "they shall make arrests when the occasion requires and must see that their prisoners are at once taken to the nearest police station or jail." Rule 6 provides that in cases of emergency all such officers shall be subject to be called upon by the board to perform such duties as may be assigned to them by the proper police authorities.

It is apparent from these provisions of the charter and of the rules of the board of police commissioners that the defendant Cesena was a public officer, appointed by public authority, and that the appellant herein had no power either to employ or to discharge him and had no power to control or to direct him in the performance of his duties as such patrol officer. Such being the case, the defendants were entitled to the instruction which they requested, reading: "I instruct you that special police officers, publicly commissioned, are deemed *prima facie* public officers, for whose wrongful acts the employer is not liable," because when it appeared that Cesena was a public officer his co-defendant was entitled to the presumption that the acts done by Cesena were in the line of his public duty, and the burden was then upon the respondent to rebut this presumption. This principle is stated in 39 C. J., p. 1356, "Where an officer is commissioned at the request of a corporation to guard its property and is paid by it, acts done by him will be presumed to have been performed in his capacity as officer in the absence of evidence to show the contrary." In support of the text are *Roll* v. *Springfield Cons. R. Co.*, 225 Ill. App. 411; *New York R. R. Co.* v. *Fieback, supra.*

The prejudice suffered by the appellant in the refusal to give the foregoing instruction was emphasized by the modification of the first instruction requested by the appellant. In this instruction the appellant requested, and the court instructed the jury in the language of rule 4 of the board of police commissioners, that it was the duty of the patrol special to see that the peace was kept and to prevent violation of the law; to make themselves familiar with the provisions of the Penal Code, the rules of the board of police commissioners and the orders of the board of supervisors and the board of health; to make arrests when occasion arises and see that the prisoners are taken to the nearest

police station or jail. The court, however, struck from the requested instruction the following language: "I instruct you if you find that defendant Cesena committed the acts referred to in plaintiff's complaint while complying with either one or more of the mandates of the above rules, then his acts were those of a police officer and no liability, therefore, can attach to defendant Pompa and your verdict must be in defendant Pompa's favor." If we are correct in accepting the Redgate case as determining the rule in this state then it necessarily follows that the appellant was not liable for any injuries to respondent arising from the acts of Cesena which were committed while the latter was complying with the rules and regulations of the board of police commissioners, and as this was unquestionably the theory upon which the appellant defended against that liability he was entitled to have that theory submitted to the jury under proper instructions.

Bearing in mind the presumption that the acts of the special officer will be presumed to have been performed in his capacity as officer until the presumption is dispelled by evidence the importance of the rejected instruction is apparent. If, as insisted by the appellant, no competent evidence was offered to dispel this presumption then the presumption alone was of such weight as evidence as to require a verdict for appellant. If, on the other hand, as insisted by respondent, some evidence was offered for that purpose then there was merely a conflict in the evidence upon an issue vital to appellant's case upon which he was entitled to an instruction covering the theory upon which he defended.

As the cause must go back for a new trial we should add that it is not sufficient, as contended by respondent, that the appellant paid the monthly wages to Cesena or that he gave general directions to Cesena as to the streets which he was to patrol and the general conduct of his duties, these directions being nothing more than directions to follow the rules and regulations of the board of police commissioners. The undisputed evidence here is that before the commission of the acts complained of the appellant informed Cesena that Semenza was looking for him and proposed to fight him; that Cesena asked appellant if he should arrest Semenza and "Pompa said no." There is

no other evidence of any direction on the part of appellant which in any way contributed to the acts complained of. Therefore, whether the shooting occurred while Cesena was engaged in the performance of his duties as a special police officer under public authority or while he was engaged with Semenza in a private quarrel there is no evidence tending to show either that the appellant directed the acts to be done or that he personally co-operated therein within the principle of *Michel* v. *Smith, supra.*

For these reasons the judgment is reversed.

Sturtevant, J., and Burroughs, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 4, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 3, 1930.

Seawell, J., dissented.