[Civ. No. 11624.   Second Appellate District, Division One.—December 22, 1938.]

UNITED AIR SERVICES, LTD. (a Corporation), Appellant, v. RICHARD HUNT SAMPSON, Respondent.

136

Gibson, Dunn & Crutcher, David P. Evans and George D. Jagels for Appellant.

Lasher B. Gallagher for Respondent.

WHITE, J.—Plaintiff instituted this action to recover damages for the loss of an airplane owned by it and rented by plaintiff for the purpose of enabling defendant and his party to fly to San Bernardino on July 9, 1934. On said date the airplane crashed shortly after it had left the ground at Shandin Hills Airport in San Bernardino on the intended return flight. The crash resulted in the deaths of the pilot, George Hague, and Sam Edwards, a passenger, while the defendant and another passenger, Harry Claiborne, survived. By his answer, defendant denied he hired the plaintiff's airplane; denied that the pilot, George Hague, was at any time an employee of defendant; denied that Hague was negligent in the operation of the airplane, and also placed in issue the value of the crashed plane. By way of special defenses, the defendant asserted that the pilot, Hague, was an independent contractor over whom defendant had no right of control, and that the plane was hired by the pilot, Hague, but that said plane was not airworthy, of which condition it was alleged plaintiff had knowledge, but of which condition plaintiff negligently failed to warn the pilot.

Following presentation of their case by both plaintiff and defendant, the court on motion of the defendant directed a verdict in his favor. The motion for a directed verdict was based on the following grounds:

"1. The evidence is insufficient to establish a case sufficient to go to the jury;

"2. The plaintiff has failed to prove by a preponderance of the evidence the material allegations of the complaint;

"3. There is no evidence in the case sufficient to establish agency, or the relation of master and servant between the defendant Sampson and George Hague."

Reconvening the jury, the court directed their verdict in the following language: "Ladies and gentlemen of the jury, I have discussed this matter with counsel upon hearing the motion, and I am directing you now . . . to give a directed verdict for the defendant. There is no evidence sufficient to go to the jury on the question of agency. That is all I am deciding now, as to the agency." Thereupon the jury returned a verdict accordingly. From the judgment entered thereon plaintiff prosecutes this appeal.

■ Appellant places special emphasis in its brief upon the single ground stated by the court as being the basis for the order directing a verdict in respondent's favor. In this connection, we deem it appropriate to say that on appeal this court is not restricted to a consideration only of the single ground stated by the trial court as the reason for directing a verdict. Upon appeal from a judgment predicated upon a directed verdict, we are allowed to investigate all the matters considered by the trial court upon such motion for directed verdict. The record before us includes the reporter's transcript, containing all the evidence at the trial, including all grounds urged by respondent in presenting his motion for a directed verdict. While it is true the trial court specified in its order directing a verdict the single reason that "there is no evidence sufficient to go to the jury on the question of agency", still the reasons given by the court for its action are not always material. (*Power* v. *Fairbanks*, 146 Cal. 611, 615 [80 Pac. 1075].) The reason given for the decision or order may be good and the decision or order at the same time incorrect for other reasons. It is the action of the court, and not the reasons given therefor, with which we are concerned. ■ Every presumption, it is true, is in favor of the order made, and it devolves upon the party appealing from a judgment based upon an order directing a verdict to affirmatively show error. This, however, may be done by presenting a record showing what was before the

court on the hearing of the motion in question. The record before us indicates that the motion for a directed verdict squarely presented to the trial court the question as to whether or not "the evidence was insufficient to establish a case sufficient to go to the jury"; whether the "plaintiff has failed to prove by a preponderance of the evidence the material allegations of the complaint"; and whether there was "evidence in the case sufficient to establish agency, or the relation of master and servant between the defendant Sampson and George Hague".

■ The order and the judgment based thereon simply indicate the action of the court, and not the showing upon which such action was based. Therefore statements or recitals in the order or judgment as to the showing made constitute no part of the order or judgment. These things can be shown only by the record on appeal, in the preparation of which the party in whose favor the judgment was rendered has an opportunity, by the presentation of proposed amendments, to make the record speak the truth. Neither party can be deprived by recitals in the order directing a verdict or the judgment based thereon of what the record on appeal shows. The record before us in the instant case presents for determination the question as to whether the evidence justified the trial court in granting the motion for a directed verdict; whether the evidence was sufficient to require the submission of the case to the jury; whether the plaintiff failed to prove by a preponderance of the evidence the material allegations of its complaint, and whether there was any evidence in the case sufficient to establish agency or the relation of master and servant between the defendant, Sampson, and George Hague, the pilot of the airplane. All these issues were tendered to and were before the trial court on the hearing of the motion for a directed verdict, and must be considered by us in determining the correctness of the order made in the court below.

■ Appellant assails the judgment upon the ground that in the face of a conflict in the evidence, the trial court fell into error in taking the case from the jury and directing a verdict for the defendant. It is the well established and settled law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit; that a nonsuit or directed verdict may

be granted only when, disregarding the fact that there is a conflict in the evidence, and giving full credit only to that portion of the evidence, whether produced by plaintiff or defendant, which tends to support the allegations contained in plaintiff's complaint, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such verdict were given. (*Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579] ; *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768].)

Appellant contends there was substantial evidence from which the jury might have found that the plane was rented by defendant, and that the latter thereupon became responsible for the negligent operation thereof; while respondent claims there was no evidence from which the jury might have found that the plane was rented without the services of a pilot; but that the only inference which can be lawfully drawn from plaintiff's evidence is that the plaintiff rented to the defendant an airplane, and that the rental price included both an airplane and the pilot; that plaintiff was guilty of contributory negligence; that there was a total failure on the part of plaintiff to prove any negligence whatsoever on the part of the pilot, Hague, or to prove that the airplane was totally demolished or destroyed.

A review of the evidence in this case convinces us that it did not contain testimony from which in its entirety reasonable men could draw but one conclusion; but on the contrary, presented a factual situation that was debatable, and upon which reasonable minds might well disagree. In support of this conclusion, we find in the record the testimony of A. Paul Mantz, president of the plaintiff corporation, who testified that according to his best recollection, he was called on the telephone at his office the day before the fatal crash by the defendant, Sampson, who inquired whether the plaintiff's J-5 Lockheed airplane was available for rental, to which Mantz replied that the plane in question was expected back the afternoon of the same date and quoted the defendant an hourly rental charge. According to this witness, the defendant then asked if he could furnish his own pilot, to which plaintiff corporation's president replied that he did not like to rent the plaintiff's planes without its own

pilot. That the defendant then stated he would prefer to have George Hague fly the plane. That after further discussion, the witness finally receded from his demand that one of plaintiff's own pilots be used, and requested defendant to send Hague over for explanation of the particular characteristics of the plane in question. The witness then testified that subsequent to such conversation George Hague came to plaintiff's office at the airport where the plane was kept, and that thereupon the characteristics of the plane were explained by the witness to Hague. The witness further testified that a month or two following the crash he had a further conversation with the defendant, the latter of whom is an attorney at law, and in that conversation the witness stated that he felt that if the crash was the result of motor failure or other fault in the plane, the loss should be borne by the plaintiff, but that if the crash was the fault of Hague, the pilot, the defendant should pay for it; that the defendant thereupon replied that if the crash was Hague's fault, he (the defendant) owed the plaintiff money. In the testimony of the defendant himself we find the admission that on the morning of the trip he called the pilot, George Hague, by phone and told him that he (the defendant), Edwards and Claiborne wanted to go to San Bernardino, and asked Hague if the latter would take them there. The defendant further admitted in his testimony that at the time this arrangement was made he knew that Hague did not himself own a plane. The defendant further testified that he told Hague where he wanted to fly, when he would meet him to commence the trip, and when he wished to return to Los Angeles after the business in San Bernardino had been taken care of.

Though there was evidence in conflict with the foregoing, nevertheless the trial court can properly direct a verdict only in cases in which there is no conflict of a substantial nature in the evidence; and where the evidence is so conclusive against the plaintiff that the court, if such directed verdict were not given, would be compelled to set aside a verdict in opposition thereto. The testimony just narrated was certainly of sufficient substantiality, if believed by the jury, to entitle it to conclude that Hague acted at all times in respect to the rental and operation of the crashed plane as an agent of the defendant, and even though Hague was not an expressly authorized agent of defendant, the conduct

of defendant as testified to by plaintiff corporation's president was such that the plaintiff was justified in believing such an agency existed.

It is the further contention of respondent, however, that since he was not himself licensed to fly the airplane, that Hague, a licensed pilot, could not act as Sampson's agent in flying the airplane, and that, because under the department of commerce regulations, plaintiff could not permit the airplane to be flown by defendant Sampson, who was not a licensed pilot, it follows, contends respondent, that plaintiff's delivery of the airplane to Hague could not constitute a delivery to Sampson. In support of this contention, respondent directs our attention to a California statute (Deering's Codes, Laws and Constitutional Amendments of California, 1933 Supplement, p. 1071, Act 151, approved June 18, 1929, as amended, Stats. 1933, p. 615), which has reference to the operation of aircraft within the state of California; and we are also referred to section 5 and section 11, subdivision (e), of Act 151, Statutes of 1929, page 1874, which provide respectively as follows:

"It shall be lawful for any person to operate or participate in the operation of any aircraft within the state of California or to act as an airman in connection therewith if such person is licensed and registered under the laws of the United States or any regulation made pursuant thereto, but it shall be unlawful for any person to act as an airman in any capacity, except that for which he is licensed under the laws of the United States or any regulation adopted pursuant thereto.

"Any person who . . . operates or participates in the operation of any aircraft within the state of California or acts as an airman in connection therewith unless he is licensed therefor under the provisions of this section or is registered and licensed therefor under the laws of the United States and any regulations made pursuant thereto, is guilty of a misdemeanor. . . ."

Respondent argues that these California statutes make it unlawful for respondent, an unlicensed pilot, to act as an "airman" in any capacity whatsoever, and that not having a pilot's license, he could not be the master or principal of Hague, a licensed air pilot, in and about the operation of the airplane. This claim of respondent cannot be sus-

tained. We are asked by respondent to hold, in effect, that the requirement that airplanes must be operated by licensed pilots precludes the relationship of agent and principal between such licensed pilots and the unlicensed persons for whom they may operate the airplane, or in other words, that an unlicensed person or corporation would not be liable for the negligence of pilots employed by it to operate its airplanes. Such a holding would be analogous to saying that unlicensed employers of licensed elevator operators could not be held for the negligent operation of such elevators, and that a person who himself was not licensed to drive an automobile could not by his actions or conduct bring about the relationship of principal and agent or master and servant between himself and a licensed chauffeur. Obviously this is not the law. The mere fact that respondent, Sampson, could not under the law tell the licensed pilot when to "gun" the motor, to rise above or stay below the clouds, to bank, to turn or to slip, does not make impossible the existence of an agency relationship between him and Hague.

There being in the record evidence of sufficient substantiality, if believed by the jury, to warrant a finding of the existence of an agency, actual or ostensible, between Hague and the defendant, we come now to a consideration of the evidence of negligence on the part of defendant through his pilot-agent, leading to the crash of plaintiff's airplane. In this connection we find in the record testimony to the effect that at the time of the final take-off the plane's motor was not missing, but appeared to be running perfectly; that after the take-off, when the pilot, Hague, was still traveling straight into the wind, he turned directly at right angles to the wind and thereupon began to lose altitude; that he then turned to the east and turned back to the airport with the wind at his tail, which in the words of one witness is "tough luck"; that from that point the plane started to lose altitude rapidly, but that during the entire time the ship was in flight, the witness at no time heard the motor missing. Amelia Earhart Putnam, testifying as an expert, who at the time had more than two thousand flying hours, and who herself had landed in the Shandin Hills Airport in a very similar plane, testifying in response to a hypothetical question, said that in her judgment the pilot Hague did not act prudently or as one who had experience should

have acted. In her testimony as an expert, Miss Earhart further testified that the pilot committed the following pilot errors: (1) choosing the short runway under the conditions present on the day of the crash; (2) pulling the ship off the ground before it had flying speed; (3) if there was any absence of proper response on the part of the motor, the pilot's failure immediately to pull the throttle after crossing certain wires beyond the airport and thereupon landing in an open field which was straight ahead. The president of plaintiff corporation testified that before Hague took the plane he discussed its characteristics with the pilot in great detail, and also discussed the physical characteristics of the Shandin Hills Airport, making a sketch of it for the pilot. This witness further testified that on four or five occasions he had personally flown in and out of the Shandin Hills Airport with the very ship that crashed; that he had had approximately six thousand hours of flying time. In response to a hypothetical question, this witness testified that the pilot should have taken advantage of the longer runway in order to obtain additional speed; that if the pilot had encountered difficulty in climbing, he should, instead of attempting to return to the airport as he did, with a tail wind, have landed in a large open field straight ahead in the direction in which the plane took off; that the witness himself had on the day immediately following the crash here in question landed the same make of plane, with a larger motor, requiring more room to land than the crashed plane, in the aforesaid open field. While again there was evidence offered in opposition to the foregoing, nevertheless such evidence merely created a conflict; and in our opinion plaintiff's evidence was of that substantial character that precluded the court from withdrawing the case from the triers of fact as to this issue of negligence.

■ With reference to respondent's contention that there was a total failure on the part of plaintiff to prove that the airplane was completely demolished or destroyed and that upon that ground alone the court was warranted in taking the case from the jury, it is sufficient to say that since the allegations of the complaint that the airplane was totally demolished and destroyed were admitted by defendant's answer, no proof thereof was necessary, and any proof to the contrary must be disregarded. In its complaint appellant

alleges "that by reason of the aforesaid carelessness, recklessness and negligence of the defendant and his said agent and employee, George Orrin Hague, *the said airplane was totally demolished and destroyed*". (Emphasis added.) "That said airplane was of the reasonable value of Four Thousand Dollars ($4,000.00) and that as a proximate result of the carelessness, recklessness and negligence of said defendant and his said agent, servant and employee the said plaintiff has been damaged in the sum of Four Thousand Dollars ($4,000.00)." In so far as the allegation concerning the alleged total destruction of the airplane is concerned, we find in respondent's answer only the following averment:

"Defendant denies that by reason of any carelessness or recklessness or negligence of George Orrin Hague the said airplane was demolished or destroyed and denies that said George Orrin Hague was guilty of any carelessness or recklessness or negligence and defendant denies that by reason of any act or omission on the part of this defendant the said airplane was demolished or destroyed. . . . This defendant has no information or belief upon the subject sufficient to enable him to answer the allegations contained in the second sentence of paragraph V, page 2 of plaintiff's complaint and placing his denial thereof upon said ground this defendant denies said allegations and each thereof and denies that said airplane was of any value in excess of the sum of $1,000. . . . This defendant denies that the plaintiff has sustained damage in the sum of $4,000 or in any other sum whatsoever as a proximate result of any act or omission on the part of this defendant."

From the foregoing it is at once apparent that although by the portions of the answer above quoted defendant denies that any acts of the pilot, Hague, caused the destruction of the airplane, and denies that the airplane was of the value alleged by the plaintiff, nevertheless the allegation of the complaint that the airplane was totally demolished and destroyed is not challenged. Obviously the answer was intended only to controvert the *cause of the destruction* as alleged in the complaint, but not the demolition and destruction itself. In any event, these denials, being in the conjunctive as to several distinct facts, must be regarded as evasive and wholly inadequate as specific denials of the total demolition of the plane, and any facts in connection there-

with thus attempted to be denied must be taken as admitted. (*Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140, 142 [77 Pac. 817].) Added to this is the admitted fact that the defendant in moving for a directed verdict did not name failure to prove damages as one of the grounds therefor, nor was any such ground presented to the court for consideration in connection with the motion for a directed verdict. We conclude that the most that can be said of the allegations contained in defendant's answer with reference to this particular issue is that they are to the effect that the airplane was not at the time of the accident of the reasonable value of more than $1,000. This language is a negative pregnant and is an admission that the property was worth the sum of $1,000. It can be taken only to be an admission that the value of the airplane which was completely destroyed as alleged in the complaint was $1,000 instead of $4,000. That the airplane was completely destroyed is a fact admitted by the pleadings, and such admission is therefore controlling upon that issue. It requires no evidence to support it. In fact, it forbids the consideration of evidence which tends to refute that stipulated fact. (*Dressler* v. *Johnston*, 131 Cal. App. 690, 695 [21 Pac. (2d) 969].) Conceding that there may be some evidence in the record indicating that certain parts of the airplane retained some value after the crash, respondent cannot take advantage of such evidence, which is directly contradicted by an allegation in the complaint admitted by the answer.

No other points demand our attention. The motion for a directed verdict should not have been granted.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 13, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1939.