## CERRI et al. v. UNITED STATES.
### No. 27451.

United States District Court
N. D. California, S. D.

Sept. 17, 1948.

832

Elden C. Friel, of San Francisco, Cal., and Carlson, Collins & Gordon, of Richmond, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty., and Daniel C. Deasy, Jr., Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

Plaintiffs, husband and wife, bring this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 921–946,[1] to recover for injuries suffered by the wife, an innocent bystander, when she was wounded as the result of a shot fired by a soldier on guard duty, while he was attempting to halt a civilian under arrest.

The record discloses the following facts:

Pfc. Robert E. Alexander of the United States Army was on guard duty as a member of the Military Police Detachment, stationed at the entrance to Pier 45, at the foot of Taylor Street in San Francisco, on August 5, 1945. He was equipped with a regulation .45 caliber Army Automatic Pistol.

Adjacent to Pier 45 was an automobile parking area marked "Reserved for U. S. Army," for the use of defendant's agents, servants and employees having business or duties on Pier 45.

On the date above, about 12:15 A.M., a civilian attempted to park his automobile in such reserved parking area. Private Alexander ordered the civilian to remove his automobile. After a discussion, the civilian removed himself and his automobile to another place, after which he returned to Private Alexander's post and engaged in an altercation with him. As a result of this, the civilian was placed under arrest by Alexander. The civilian escaped from the custody of Private Alexander and fled in his automobile. Alexander fired his pistol at him as he was so fleeing and it was the bullet from this shot which struck the head of the plaintiff wife, present among a group of innocent bystanders, causing her serious injuries.

At the most, the civilian trespasser was guilty of a misdemeanor. Since local law determines the question of negligence, State of Maryland, to Use of Burkhardt, v. United States, 4 Cir., 165 F. 2d 869, and since the California courts have consistently held that shooting is not justified to arrest, or to prevent the escape of a person who has committed a misdemeanor, Alexander's conduct was negligence per se. People v. Wilson, 36 Cal. App. 589, 172 P. 1116; People v. Lathrop, 49 Cal.App. 63, 192 P. 722.

The defendant denies liability on the ground that a municipality, under California law, cannot be held liable for the tortious acts of police officers acting in the line of duty. Wood v. Cox, 10 Cal.App.2d 652, 52 P.2d 565; Baisley v. Henry, 55 Cal. App. 760, 204 P. 399. Further, defendant

---

[1] In 1948 Revision, see 28 U.S.C.A. § 2671 et seq.

claims that it is recognized under California law that the sovereign police power cannot be delegated to a private individual and therefore, no private individual is liable for the tortious acts of a special policeman employed by him, when such acts are committed by such employee while acting in the line of his duty as a police officer. St. John v. Reid, 17 Cal.App.2d 5, 61 P.2d 363; Maggi v. Pompa, 105 Cal.App. 496, 287 P. 982.

█ This is, apparently, a case of first impression, research of both court and counsel having produced no decision directly in point. Determination of the instant case, therefore, must rest on construction of the statute, keeping in mind the purpose of Congress in enacting it. The purpose of this act is the relinquishment by the Federal Government of its sovereign immunity against suits of this nature. Without such a statute, an individual who has suffered injuries as the result of negligence on the part of agents, servants or employees of the United States can receive compensation only through private bills passed by Congress. The need to avoid such a lengthy and cumbersome method has resulted in the passage of this statute. To reason that the United States cannot be here held liable because a municipality in California is protected by the sovereignty of the state, is to ignore the plain meaning of the Federal Tort Claims Act and to deny the object sought by Congress. The purpose of the surrender of sovereign immunity in these particular cases cannot be ignored.

The defense that this act does not apply to those cases wherein the negligence occurred during the exercise of a sovereign power of the United States, if heeded, would create a twilight zone of governmental activities in which the consent given by this statute could not be applied. Too numerous are the affairs of a purely governmental or sovereign nature, prohibited to or not duplicated by the activities of private individuals, to consider this to be the intent of Congress. Certainly, the statute itself makes no distinction between governmental activities of a sovereign nature and those of a proprietary nature, nor does it include within the claims exempted, 28 U.S.C.A. § 943,[2] those of this type.

█ There can be no allegation that the Federal Tort Claims Act constitutes a delegation of sovereign power to any private individual. Read fully, the act is the simple giving of the consent of the United States to tort actions against itself.

The phrase " * * * where the United States, if a private person, would be liable * * *," 28 U.S.C.A. § 921 and § 931,[3] is not to be understood to mean that the United States can be sued only if a private person can be sued under the identical circumstances. This phrase does not determine the relationship of the government to its employees, but rather determines the relationship of the government to third parties. The act gives the consent of the United States to be treated by the injured party as if it were a private individual, amenable to court action without claim of immunity, in all those cases, not exempted by the act, where the negligence of its agents, servants or employees has caused injury or damage to third parties.

█ The statute itself[4] creates the existence of employer to employee in the instance of a soldier in the United States Army. Effective regulations of the United States Army provide for the arrest of civilians by members of the guard or military police, 3 Fed. Reg., 1 Army-War Dept., 586, within the limits of military jurisdiction. The area wherein this shooting took place was included within that portion of the Pacific Coast which had been designated as a military area. Executive Order No. 9066 of February 19, 1942, 7 Fed. Reg. 1407; Public Proclamation No. 1 of March 2, 1942, 7 Fed.Reg. 2320; Public Proclamation No. 2 of March

---

[2] In 1948 Revision, 28 U.S.C.A. § 2680.

[3] In 1948 Revision, 28 U.S.C.A. §§ 2672, 2674.

[4] "(b) 'Employee of the Government' includes officers or employees of any Federal agency, members of the military or naval forces of the United States * * *." 28 U.S.C.A. § 941 (b) [now § 2671].

834

16, 1942, 7 Fed.Reg. 2405. Under such orders, the soldier had the right to exclude trespassers and to use all force necessary to do so. The soldier was acting under general orders and regulations to protect all government property in view and to arrest all persons causing disorders on or near his post of duty, and to turn such persons over to the guard. The fact that in so doing he used greater force than necessary and so became guilty of negligence would not place his acts outside the scope of his employment.

■■■■ Pfc. Alexander's negligence while acting within the scope of his employment was the proximate cause of plaintiff Edith M. Cerri's injuries and she is entitled to recover as against defendant.

A husband is entitled to recover for the damages sustained by him where he has been deprived of the services of his wife as a result of physical injuries suffered by her through the negligence of the defendant. Martin v. Southern Pac. Co. 130 Cal. 285, 62 P. 515; Meek v. Pacific Elec. Ry. Co., 175 Cal. 53, 164 P. 1117. Judgment must also be given in favor of the plaintiff husband as against defendant.

■■■ The Court concludes that plaintiffs are entitled to recover from defendant the following sums: for plaintiff Edith M. Cerri, the sum of twenty thousand dollars ($20,000) general damages; for plaintiff Deano Cerri, the sum of five hundred dollars ($500) general damages; and for the plaintiffs, the sum of two thousand dollars ($2,000) special damages; the total of which sums amounts to twenty-two thousand, five hundred dollars ($22,500).

It is further ordered that the plaintiffs have their costs to be hereinafter taxed.

In view of the foregoing facts as the Court finds them to be and the law deemed applicable in the Court's opinion, the issues here should be found in favor of the plaintiffs and accordingly, counsel for the plaintiffs may submit Findings of Fact and Conclusions of Law; and exceptions are hereby allowed counsel for the Government.

## Findings of Fact

I. This action is brought pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. Sections 921–946.[5]

II. At all times mentioned in plaintiffs' complaint, as amended, plaintiffs Deano Cerri and Edith M. Cerri were and are husband and wife, citizens of the United States and residents of the City of Martinez, County of Contra Costa, State of California; the acts of which plaintiffs complained in their complaint occurred on August 5, 1945, in the City and County of San Francisco, State of California; and the amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

III. On and prior to August 5, 1945, at approximately 12:15 o'clock, A.M., Pier 45, situated on the waterfront in the area commonly known as Fisherman's Wharf, in the City and County of San Francisco, together with a portion of the public street in front of said Pier 45, were in the possession and control of defendant and were being used by defendant as a part of the Port of Embarkation of San Francisco for the loading and shipment of personnel and war equipment to the South Pacific Area, and were enclosed with a steel fence. Immediately adjacent thereto were a number of public restaurants, called "Grottos." A part of the area of the public street bounded on the north side by said restaurants and on the east side by said steel fence, was designated as an automobile parking area for patrons of said restaurants. Another part of said area outside of said fenced area, and immediately adjacent to said steel fence was marked "Reserved for U. S. Army," and was used by, and available for, defendant's agents, servants and employees having business or duties on said Pier 45, and next thereto was a sentry post, consisting of a gate through said fence and a sentry box.

IV. On August 5, 1945, at approximately 12:15 o'clock A.M., Robert E. Alexander, Pfc. an enlisted member of the United States Army and a member of Military Police Detachment 9206, Training Service Unit, Transportation Corps, was, by orders

5 In 1948 Revision, 28 U.S.C.A. § 2671 et seq.

of his superior officers, on official guard duty, as a sentry, at said sentry post; was clothed in the official United States Army uniform; was armed with a regulation .45 caliber Army automatic pistol, issued to him by the United States Army; and he was acting under general orders and regulations of the United States Army to take charge of that sentry post and all government property in view and to arrest all persons involved in a disorder occurring on or near his post, and turn them over to the corporal of the guard.

V. At said time and place, a civilian parked his automobile near said post in the area marked "Reserved for U. S. Army." Said Robert E. Alexander directed the civilian to move his automobile out of said space; an argument over the matter ensued; and after some argument between them, the civilian moved his car to the area designated for the parking of automobiles of patrons of said public restaurants; the civilian then returned to said sentry post, questioned the said Robert E. Alexander as to his right to require him to move his automobile; they commenced quarrelling over the matter, and the quarrel developed into a fist fight between them. Said Robert E. Alexander thereupon placed said civilian under arrest, he broke away, ran over and got into his automobile and started to drive towards Grotto No. 9. At that moment plaintiffs, Deano Cerri and Edith M. Cerri, who with a party of friends had been having dinner in said Grotto No. 9, had finished their dinner, walked out of the restaurant and had stepped into the street in front of said Grotto No. 9, on the way to their automobile. There were 20 or more other people in front of said Grotto at that time, of which said Robert E. Alexander had knowledge. At said time, in an effort to prevent the escape of said civilian, said Robert E. Alexander negligently and carelessly fired a shot from his said .45 caliber automatic pistol, directly towards plaintiffs and the other people standing in front of said Grotto, and negligently caused said bullet to strike plaintiff, Edith M. Cerri, in the head, and she sustained personal injuries as a result thereof. The negligence of said Robert E. Alexander consisted in his unlawful act of shooting his pistol at said civilian to prevent his escape, when the civilian was guilty at most of the crime of assault and battery, a misdemeanor; in his failure to exercise reasonable care for the protection of the crowd of people in front of said Grotto No. 9, whom he knew, or by the exercise of reasonable care should have reasonably expected to be there, by shooting his pistol directly towards them; and in his act of shooting his pistol without using reasonable care to see that the bullet did not strike plaintiff, Edith M. Cerri, an innocent bystander, who was only a few feet from the automobile in which the civilian was fleeing at the time the shot was fired. Each of said acts of negligence was a direct and proximate cause of the injury to plaintiff, Edith M. Cerri, and of the damages thereby sustained by plaintiffs.

VI. At all of said times, said Robert E. Alexander was a member of the United States Army, an employee of defendant, and was acting within the scope of his said employment and in line of his duty as said soldier, and in obedience to his orders and regulations from the United States Army to take charge of all government property in view of said sentry post and to arrest all persons involved in a disorder occurring on or near his post and turn them over to the corporal of the guard. The whole episode occurred near said sentry post and in the immediate vicinity thereof, and from the time the civilian drove his automobile into the parking space marked "Reserved for U. S. Army" until the bullet entered the head of plaintiff, Edith M. Cerri, the conduct and course of action of said Robert E. Alexander was an unbroken series of continuous and connected acts inextricably intertwined with the service of said Robert E. Alexander to his employer, the defendant, and the shot was fired by said Robert E. Alexander in and as a part of the business of defendant.

VII. At the time of the happening of said accident and prior thereto, plaintiff, Edith M. Cerri, was a healthy, able-bodied woman, regularly employed, capable of earning, and actually earning, the sum of $120 per month. As a proximate result of said negligence, the said bullet pene-

trated the left temporal and frontal region of her skull, with shattering of the bone into the left frontal sinus chamber and causing injury to her brain, resulting in severe pain and suffering, permanent disfigurement, permanent injury to her brain and permanent increased danger of infection of the damaged area through the left frontal sinus chamber, which was permanently opened into that area; plaintiff, Edith M. Cerri, was operated on twice, was confined in a hospital from August 5 to September 8, 1945, and from April 13 to May 1, 1946, and made 20 clinical visits to the hospital for treatment, with the result that plaintiffs paid, and became obligated to pay, the sum of $891.75 for hospital care and X-rays, and for the services of physicians, surgeons and nurses, which sum is the reasonable value thereof; plaintiffs reasonably and necessarily incurred expense of $320 in connection with said trips by plaintiffs from Martinez, California, to the University of California Hospital in San Francisco, for examination and treatment of plaintiff, Edith M. Cerri, which sum is the reasonable value thereof; plaintiff, Edith M. Cerri, was rendered incapable of any gainful activity for a period of 9 months, by reason of which she lost earnings in the sum of $1,080 which sum is the reasonable value thereof; and plaintiff, Deano Cerri, sustained a total loss of the services of his wife, plaintiff Edith M. Cerri, consisting of her aid, advice, and assistance rendered to him in conducting his affairs, and management of the home, for a total of 53 days, and a partial loss of her said services for a period in excess of 9 months, for which plaintiff, Deano Cerri, is entitled to an independent recovery of general damages.

VIII. At all times mentioned above, plaintiffs were innocent bystanders, who had no connection or relationship with said quarrel, fist fight, or with either of the participants, and each plaintiff exercised ordinary care under the circumstances for his and her own safety; and the injuries and damages sustained by plaintiffs were not directly or proximately caused or contributed to by the negligence or carelessness of plaintiffs, or either of them.

IX. The said accident, injuries and damages complained of by plaintiffs in their complaint, as amended, were not due to, or caused by, an unavoidable accident.

 X. The plaintiffs did not, prior to the filing of their complaint herein, file with the War Department, or any other agency of defendant, pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 921–946,[6] any claim for damages arising out of the accident referred to in their complaint; however, on July 23, 1946, plaintiff Edith M. Cerri did file with the War Department a claim for $951.75 for hospital and medical expenses only, under the provisions of the Act of July 3, 1943, 57 Stat. 372, as amended, 31 U. S.C.A. § 223b. That Act was repealed by the Federal Tort Claims Act, as to plaintiffs' claim, and on March 4, 1947, the War Department denied said claim, by written notice to plaintiff, Edith M. Cerri, upon the ground that the Act of July 3, 1943, under which it was filed, had been repealed by the Federal Tort Claims Act, and that the War Department had no authority to settle the claim administratively under the Federal Tort Claims Act, because her claim for hospital and medical expenses, together with her other items of damage, including pain and suffering, loss of wages, and permanent disability, obviously brought the total amount of her claim to an amount in excess of $1,000. Plaintiffs' claims are not barred or limited in amount by any of the provisions of § 931(b) of the Federal Tort Claims Act, 28 U.S.C.A. § 931(b),[7] which relate to the effect of presenting claims to any Federal Agency under the Act.

XI. The claims of plaintiffs set forth in their complaint arose out of non-combatant activity of a non-combatant member of a non-combatant branch of the United States Army, which occurred in a non-combat area; and plaintiffs' claims are not excepted from the provisions of the Federal Tort Claims Act by the provisions of

---

[6] In 1948 Revision, 28 U.S.C.A. § 2671 et seq.

[7] In 1948 Revision, 28 U.S.C.A. §§ 2674–2676.

Section 943(j) of the Federal Tort Claims Act, 28 U.S.C.A. § 943(j).[8]

XII. The claims of the plaintiffs set forth in their complaint arose out of negligence, and are not excepted from the provisions of the Federal Tort Claims Act by the provisions of § 943(h) of the Federal Tort Claims Act, 28 U.S.C.A. § 943 (h),[8] or by the provisions of any other subdivision of said § 943.

XIII. The remaining allegations of plaintiffs' complaint, as amended, and all the allegations thereof not hereinbefore specifically found upon, are true. All the allegations and denials in the answer of defendant not hereinabove specifically found upon, are untrue.

### Conclusions of Law

I. By reason of the foregoing facts, the Court concludes that plaintiffs, Deano Cerri and Edith M. Cerri, are entitled to recover from defendant, United States of America, the sum of $22,500 together with plaintiffs' costs of suit.

II. Plaintiffs' attorneys, Elden C. Friel, Esq., and Messrs. Carlson, Collins & Gordon, are entitled to be paid out of said recovery, as compensation for their services rendered to plaintiffs herein, an attorneys' fee in the sum of 20% of said recovery, to be divided between them, by their agreement, as follows: To Elden C. Friel, five-sixths (⅚) of said fee, and to Carlson, Collins & Gordon, one-sixth (⅙) of said fee.

It is so ordered and Judgment shall be entered accordingly.

---

[8] In 1948 Revision, 28 U.S.C.A. § 2680.