JOSEPH CORRON, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 22312.)

WILLIAM DWANE, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 22313.)

NELSON CARL, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 22314.)

Court of Claims, March 23, 1939.

*J. Edgar Downs*, for the claimants.

*John J. Bennett, Jr., Attorney-General* [*John L. Campbell* and *Joseph L. Fitzgerald, Assistant Attorneys-General*, of counsel], for the defendant.

BARRETT, P. J. Claimants were the owners of farms in Clinton county upon which they maintained orchards of fruit trees. In the winter a great number of hungry cottontail rabbits destroyed a large part of the trees, and damages caused thereby are asked of the State. By section 198 of the Conservation Law, as it read when the claims accrued in January, 1931, but for which section 189 has since been substituted by chapter 40 of the Laws of 1938, it was provided that the open season for cottontail rabbits was from October fifteenth to January thirty-first, in so far as the location of these claims is concerned. The acts complained of occurred between January first and April fifteenth. It was also provided in said section that six of such rabbits might be taken each day, except by the use of ferrets, and also that " The owners or occupants of inclosed or occupied farms and lands or a person duly authorized in writing by such owner or occupant may take in any manner at any time and in any number varying hares and cottontail rabbits which are injuring their property." (Laws of 1930, chap. 366.)

In *Barrett* v. *State* (220 N. Y. 423) the right of the State to reasonably control and regulate wild animals was upheld. In that case it was said:

" The general right of the government to protect wild animals is too well established to be now called in question. Their ownership is in the State in its sovereign capacity, for the benefit of all the people. Their preservation is a matter of public interest. They are a species of natural wealth which without special protection would be destroyed. Everywhere and at all times governments have assumed the right to prescribe how and when they may be taken or killed. As early as 1705 New York passed such an act as to deer (Colonial Laws, vol. 1, p. 585). A series of statutes has followed protecting more or less completely game, birds and fish.

" ' The protection and preservation of game has been secured by law in all civilized countries, and may be justified on many grounds. * * * The measures best adapted to this end are for the Legislature to determine, and courts cannot review its discretion. If the regulations operate, in any respect, unjustly or oppressively, the proper remedy must be applied by that body.' (*Phelps* v. *Racey*, 60 N. Y. 10, 14.)

"Wherever protection is accorded harm may be done to the individual. Deer or moose may browse on his crops; mink or skunks kill his chickens; robins eat his cherries. In certain cases the Legislature may be mistaken in its belief that more good than harm is occasioned. But this is clearly a matter which is confined to its discretion. It exercises a governmental function for the benefit of the public at large and no one can complain of the incidental injuries that may result."

That case is analogous to this, and is determinative of the questions involved here. No liability attaches to the State, and the claims must be dismissed.

MURPHY, J., concurs.