## CLAYPOOL v. UNITED STATES.

### Civ. 1112.

United States District Court
S. D. California, S. D.
July 11, 1951.

Byron F. Lindsley, San Diego, Cal., for plaintiff.

Ernest A. Tolin, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Chief, Civil Division, Max F. Deutz, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

WEINBERGER, District Judge.

The jurisdiction of this Court arises by virtue of the Tort Claims Act, Section 1346 of Title 28 U.S.C.A., which reads in part, as follows: "(b) Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

At all times pertinent to this action Yellowstone National Park was a National Park of the United States located within the State of Wyoming under the administration and control of Park Rangers who were employees of the United States, Department of Interior.

On July 13, 1948, Plaintiff and his wife and son paid an entrance fee and entered said Park, received a brochure published by the defendant of which Exhibit I is a copy, and proceeded to Old Faithful Camp Ground within the Park. Plaintiff made inquiry of a Park Ranger concerning whether it was safe to sleep outside, and was told that it was, whereupon plaintiff and his family slept outside in a tent on the night of July 13th. After going to another part of the Park, plaintiff and his family returned to Old Faithful Camp Ground about 5:00 P.M. on the 15th day of July. Inquiry was made by plaintiff's wife, in plaintiff's presence of a Park Ranger at the Ranger Station as to whether it was safe to sleep outside in a tent and sleeping bags, the second inquiry being occasioned by the fact that plaintiff had seen several bears on the road. The Ranger answered that hundreds of people slept out every night and "they had never had anyone attacked without provocation" and that bears would not come around unless the campers had food. Plaintiff and his family pitched their tent in the camp ground and retired. They had no food in their automobile or tent.

About 1:00 A.M. on the morning of July 16, 1948, while plaintiff was inside the tent and in a sleeping bag, a bear ripped a hole in the tent and entered it, attacked plaintiff, gashing plaintiff's leg with his teeth, and injuring him. Several other people were similarly injured the same morning.

It appears from the evidence that on July 13, 1948, prior to plaintiff's entry into the Park, a bear or bears raided Old Faithful Camp in the early morning and attacked and injured several campers as they slept. Such an attack was unheard of by Rangers of more than twenty years experience, and an unprovoked raid had never before taken place in the Park. Shortly after the raid, all the Park Rangers were alerted and a search was made, and at about 4:00 A.M. a small grizzly was shot and killed. It thus appears that all

704

of the Rangers employed in the Park, including the Rangers of whom plaintiff and his wife made inquiry on the evening of July 13 and on July 16 knew of the previous attack made by the bears upon campers who were sleeping out, and that campers had been injured by such attack. Plaintiff and his family were not told by anyone, either a Park Ranger or a camper, of the attack made by the bears on July 13, 1948.

Plaintiff claims that the injuries occurring to him as above mentioned were occasioned by reason of the negligent operation by the defendant of said Park. The defendant United States has pleaded that any injuries sustained by plaintiff were caused by his own negligence: that all the risks and dangers connected with the situation at the time and place mentioned by plaintiff were open, obvious and apparent and were known to and assumed by plaintiff.

Exhibit I, the brochure describing the Park and its facilities, contains a map on which the designation "Free Auto Camp Grounds" appears in many places. The brochure mentions that wood may be purchased at the camps, that campers may also obtain fuel from dead trees, that the camp grounds are supplied with water, sanitary facilities and cooking grates and that camp fires must be extinguished when leaving.

The brochure also contains the statement that Park Rangers constitute the protection organization for the Park, are responsible for law enforcement, handle information, etc. and further reads, in bold type: "Consult the men in uniform—they are at your service."

At one place in the brochure bears are mentioned as follows: "Bears. It is unlawful and extremely dangerous to feed, molest, tease or touch bears. If you photograph or approach them closely, you do so at your own risk and peril. To avoid damage from bears, food should never be left in automobiles or tents unattended."

Elsewhere in the brochure we find: "While apparently friendly, the black bears (many of which frequent the park roads and some camp grounds) cannot be trusted and are potentially very dangerous. Ob-

serve them only from a distance. Regulations which prohibit the feeding, molesting, touching, or teasing of bears will be enforced for the protection of all visitors."

■ The evidence fails to disclose any negligence on the part of plaintiff.

■ On the question of assumption of risk, it is our view that the risk was a concealed one, and that plaintiff not knowing of any risk could not assume one. Further, the language of the brochure, itself, is sufficient to cause those visiting the camp to believe they will be safe in camping out provided they observe the regulations. Were the statements in the brochure not sufficient certainly the information, or lack of information, given by the Park Rangers in answer to plaintiff's inquiries served to give him a sense of security from danger.

■ Counsel for the Government then reasons that the Government was under no duty to warn plaintiff, because, he states: "The Government has warned all who enter the park, by brochure and by signs, that, if they did not already know it, bears can be dangerous. This naturally would indicate to any reasonably intelligent individual that whenever you are out in the open in the presence of bears, you are taking some risk that the bears may attack."

Also, counsel mentions that the bear thought to be the offender in the first attack had been killed, and that it was logical that the Rangers in charge of the Park might believe the danger to have been removed. We agree with the reasoning of plaintiff that there was a reasonable probability that the bear the Rangers killed, if it did participate in the first raid, was not alone. Further, according to the evidence the search for an attacking bear or bears was in progress during the day following the killing of the one bear. A new and extraordinary danger to persons camping out was shown to have been present in the Park by the raid of July 13th, and defendant's employees, if they believed the danger to have been removed by the time plaintiff entered on the same day, were not justified in such assumption.

■ We find no merit in the argument of the defendant that the Rangers who

failed to give the true facts to the plaintiff upon his inquiry were not acting in the scope of their employment. The testimony of their superior officer and the brochure published by defendant negative this contention.

The defendant's counsel has cited cases regarding the liability of a governmental agency where incidental injuries are caused by wild animals under the protection of such agency. In Mann v. State, Ct.Cl., 47 N.Y.S.2d 553 the opinion deals with the question of whether or not the State of New York was liable for injuries occasioned by a deer darting out upon the highway of the State Park Commission and colliding with plaintiff's automobile; the New York court there held that the State was not liable, notwithstanding the alleged failure to provide suitable guards, railings and fences, since the State was acting as trustee for the people and exercising a governmental function for the benefit of the public at large.

In another New York case cited by the defendant, Corron v. State, 170 Misc. 811, 10 N.Y.S.2d 960, 961, holding that where the State exercised its discretion in protecting wild animals or game, it exercised a governmental function for the benefit of the public at large and no one could complain of the incidental injuries that might result.

These New York cases do not assist us in our decision of the issues presented here. By virtue of the Tort Claims Act, when circumstances are shown under which a private person would be liable for the negligent acts of its employees within the scope of their employment the United States has such liability with reference to the acts of its employees. Cerri v. United States, D. C. Cal.1948, 80 F.Supp. 831, 833.

Counsel for plaintiff argues that plaintiff was an "invitee" of the defendant when he entered Yellowstone Park, and refers to the payment of the entrance fee by plaintiff. Counsel quotes 65 C.J.S., Negligence, § 43, page 519 as follows: "One who has paid for the privilege of entering upon or using the property of another is an invitee when on such property for the purposes within the privilege".

We are not inclined to attach any importance, for the purposes of this opinion, to the fact that plaintiff paid a so-called "entrance fee" upon admission to the Park. Such fee did not give the plaintiff herein the status of a "business" invitee, and did not increase or affect the quantum of care owed the plaintiff by the defendant.

A Wyoming Supreme Court case cited by plaintiff, Dudley v. Montgomery Ward and Company, 64 Wyo. 357, 192 P.2d 617 is cited by counsel. The opinion contains a detailed analysis of the duty of a storekeeper to his customers, and is decided on the theory that the storekeeper did not exercise reasonable care to keep his premises maintained in a safe condition. This case is not in point, for, as mentioned above, plaintiff was not a "business" invitee. See Restatement, Torts, Negligence, Section 332.

In Am.Jur. Vol. 38, Section 99, we find the following: "The purpose for which a person enters upon the premises of another is material in determining whether the person entering has the status of an invitee. In order to entitle one to the status of a person who has entered upon the premises by invitation, it must appear that his entry was in response to, and by way of an acceptance of, the invitation. One is not deemed to have been upon premises by implied invitation unless his purpose was one of interest or advantage to the owner or occupant. An invitation will be implied on behalf of one who enters the premises of another in pursuance of an interest or advantage which is common or mutual to him and the owner or occupant, but no more than a license is implied where one enters the premises of another, not in response to any inducement offered by the owner or occupant, or for a purpose having some connection with a business actually or apparently carried on there, but for his own mere pleasure, convenience or benefit * * *."

Section 330 of the Restatement on Torts defines a licensee as "a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission."

Section 331 of the Restatement defines a gratuitous licensee as any licensee other than a business visitor, and comments: "A licensee whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom."

The Restatement at Section 343 makes a distinction between the care owed the different types of visitors upon an owner's land, and indicates that a gratuitous licensee is entitled to expect nothing more than an honest disclosure of the dangers known to the owner or possessor of the land.

American Jurisprudence, Volume 38, Section 106, on the subject of "Warning of Danger" has the following to say: "The most that the licensee can expect is an opportunity for an intelligent choice as to whether or not the advantage to be gained by coming on the land is sufficient to justify his incurring the risk incident thereto."

We do not believe it is necessary, for the purposes of this opinion, to make any fine distinction as to the exact status occupied by plaintiff when he entered the Park; nor do we deem it necessary to formulate a broad and inclusive definition of the quantum of care owed by defendant to plaintiff. It is enough to say that regardless of whether plaintiff was expressly or impliedly invited into the Park, regardless of whether he had the right to expect protection from injury, he was in the Park by permission of the defendant, and his activities there in no way transgressed the permission given. A danger to plaintiff known by the employees of the Park existed. Under similar conditions, the minimum duty which a private individual would owe a person coming upon premises maintained by such individual would be "an honest disclosure of the danger known" to

provide "an opportunity for an intelligent choice" as to whether he wished to incur the risk incident to coming upon the land.

We find that the plaintiff suffered injury caused by the negligent omission of employees of the Government acting within the scope of their employment.