Burrel RUBENSTEIN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 47820.

United States District Court,
N. D. California.

Feb. 25, 1972.

Arthur Cofod, Angell, Adams & Holmes, San Francisco, Cal., for plaintiff.

Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION DENYING PLAINTIFF'S CLAIM FOR RELIEF

SPENCER M. WILLIAMS, District Judge.

Plaintiff Burrel Rubenstein brought this action against the United States under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) to recover for personal injuries suffered as a result of an attack by a bear while camping at Yellowstone National Park. The case was tried before the court without a jury and after careful review of the evidence and the law the court finds in favor of the defendant.

### FINDINGS OF FACT

On the evening of September 9, 1965 Rubenstein, his son Loren, and his son's friend entered Yellowstone Park by automobile. The two boys had planned to sleep out that evening at Fishing

Bridge Camp Ground and it was only after Rubenstein was unable to secure satisfactory lodgings for himself at the Lake Lodge that he decided to join them. The campers set up camp, purchased steaks and other supplies from the nearby store, prepared and ate dinner, and turned in sometime between 10 and 10:30 p. m. At about 11 p. m. the boys observed a black bear rummaging through trash cans close by. At approximately 1 a. m. the plaintiff was awakened in his tent by the pressure of a large bear paw on his chest. His understandably startled reflex apparently startled the bear, and in the tussle which ensued the bear severely mangled plaintiff's legs. The boys, who were in sleeping bags nearby, were awakened by the cries of plaintiff and were able to drive off the animal. Plaintiff was taken immediately by park officials to a nearby hospital for treatment.

The campground where the incident occurred was within one of the most populated areas in the Park. Located in close proximity were the fire station, gas station, store, ranger's office and restrooms. Plaintiff's camp site was located only fifty (50) feet from a lighted restroom. Electric lights were strung throughout the campground and were burning at the time of the incident. The campgrounds were filled almost to capacity the night in question.

While plaintiff was a novice camper, he had previously visited Yellowstone on several occasions. The party had been given the usual Park brochures upon entrance to the Park. These brochures generally admonish visitors about the dangers prevalent in a wild life park and list suggestions as to how to conduct themselves with respect to the use of the camp sites.

The following warnings are clearly printed in what the defendant refers to as the "special bear insert":

## ABOUT BEARS

Like all animals in our National Parks, bears are wild animals. Because of their protected status they have lost their fear of man. While this may make them appear tame, actually in this state they are more dangerous.

Plaintiff testified that he read the brochures in detail and recalled they indicated the Park was populated by wild, dangerous, unpredictable animals. Plaintiff further testified that he complied with all camp rules, did not leave any food in the car or in the tent and completely cleaned the camp site after the meal.

The ranger stationed at the plaintiff's campground on the morning of the attack was not identified and was not available as a witness. Gary Hammond, the Park Ranger responsible for supervision of the region of the park which included Fishing Bridge, testified that it was the universal practice of rangers to advise visitors that all wild animals, including bears, are dangerous. He further stated that large signs are also posted throughout the park warning visitors that bears are dangerous.

There was uncorroborated testimony by Loren to the effect that at the time the Rubenstein party arrived at the campground he (Loren) made inquiry at the ranger station as to the possibility of trouble from animals and was assured by a ranger that they would have nothing to worry about.

## CONCLUSIONS OF LAW

While reported cases dealing with facts similar to those presented here do not abound, two well-considered opinions have established useful guidelines.

In Claypool v. United States, 98 F. Supp. 702 (S.D.Cal.1951) the court found negligence on the part of the government and awarded plaintiff damages.

There, the plaintiff and his family had entered Old Faithful Camp Ground (Yellowstone) on July 13, 1948, established camp, and slept there that night. The next morning they packed and toured other parts of the Park, returning to Old Faithful Camp Ground on the evening of the 15th. They specifically asked the Park rangers, as they had on the 13th, whether it was safe to sleep out that evening. They were assured, as they had been on the 13th, that they had nothing to fear. Left unmentioned by the ranger was the fact that before plaintiffs initial arrival on the 13th, that very campground had been the scene of a raid by a bear or a group of bears during which a number of campers had been attacked as they slept. At about 1 a. m., July 16, as plaintiff Claypool lay sleeping in his tent a bear attacked and severely injured him.

The court found that the duty of care defendant owed plaintiff under Wyoming law to warn him of known dangers had been breached by the ranger's inexcusable and inexplicable failure to inform plaintiff of the recent attack by bears at the campground.

It is essential to note that the danger to which Mr. Claypool was subjected was not of an uncertain nature relating to the general vicious propensities of bears. Rather, it was a very real, "new and extraordinary danger to persons camping out . . . shown to have been present in the Park by the raid of July 13th . . . . ." Claypool v. United States, *supra,* at p. 704.

In contrast, the danger of which plaintiff here contends he should have been warned was not specific and was certainly not known to, or even reasonably foreseeable by, the rangers. It is difficult, in fact, to envisage what additional measure the park authorities could have taken to warn of such an unexpected occurrence.

In *Claypool* it was found that the risk the government claimed plaintiff assumed was "a concealed one". *Claypool, supra,* at p. 704. In the instant case nothing was concealed by the park rangers. Absent a specific, undisclosed danger, plaintiff can be said to have assumed the generally known risks of camping in the park. Plaintiff testified he had been in the park on several previous occasions; that on each occasion he had read the brochures; and that he was at least familiar enough with bears to know the difference between a black bear and a grizzly bear.

Mr. Rubenstein maintains he was lulled into a "false sense of security" in that he was led to believe that if he obeyed all the rules and regulations he would not be attacked by a bear. The court holds that a reasonable man under circumstances similar to those described herein would have realized this type of danger exists in a wild life park and that Mr. Rubenstein either knew or should have known of the risk of an unprovoked attack.

Both the legal and policy considerations involved in the instant case are akin to those discussed in Ashley v. United States, 215 F.Supp. 39 (D.Neb. 1963). There the plaintiff, a visitor to Yellowstone, was attacked by a bear in midafternoon while dozing in his automobile. While the court in that case may have been able to ultimately find contributory negligence on the part of the plaintiff, it expressly declined to reach that consideration, as it found the government had, by posting warning signs and issuing plaintiff the general park literature about bears, fulfilled the duty of care owed to him. (See *Ashley, supra,* at p. 47). Specifically, the court "[did] not find that the rangers in the area were aware prior to the plaintiff's injury that the bear which caused plaintiff's injuries . . . was dangerous to the safety of park visitors or employees, or more important that it would make an unprovoked attack on an automobile or on a passenger in it." *Ashley, supra,* at p. 45. And continuing, at page 47:

The plaintiff . . . contends that defendant was negligent in failing to give the plaintiff a more adequate warning concerning bears than was

given and that this negligence was a proximate cause of the injury. The court is of the opinion that no such failure on the part of the defendant caused plaintiff's injury. The plaintiff was told that bears were dangerous and that any attempt to feed or molest them was dangerous.

In the present case, the evidence indicates that the attack suffered by Mr. Rubenstein was even less predictable. The campground was bustling with campers, lights were on, and fires were blazing.[1] Furthermore, Ranger Hammond described grizzly bears as "skittish and timid" animals that reside in the back-country regions of the Park and that he knew of no previous unprovoked grizzly attacks in the populated areas of the park. That a grizzly bear would embark on an unprovoked attack under these circumstance was totally outside the experience of the Park authorities.

It cannot be over-emphasized that to a very great extent the value and attraction of national parks is their natural and untamed state. They offer vacationers a relief from the all too artificial and confining aspects of city life. As stated in the *Ashley* decision:

> [T]he public interest in maintaining parks like Yellowstone, where the land is preserved in its undisturbed state and wild animals are found in their natural habitats, outweighs any interest plaintiff may have in holding the defendant as an insurer of the safety of visitors in bear country. The defendant made the choice to set aside the park land not for any selfish or personal reason, . . . but for the good of the entire public, including the plaintiff. *Ashley, supra* at p. 43.

With the increased public demand for opening wild areas for hiking and camping, the imposition of a standard of liability greater than that set forth in the *Claypool* case would create tremendous additional costs to the taxpayers and could conceivably inhibit the government's willingness to develop additional recreational areas. With the impending shorter work week and longer vacation periods, more and more persons will find additional time for this wholesome recreational activity. Warnings as to known physical dangers such as those in the various thermal areas are, of course, required. But warnings as to unanticipated earthquakes, lava flows, landslides should not be. So too, while reasonable control of animals such as that currently practiced, and warnings as to currently known presence of attack-minded animals are also required, the law imposes no duty on park authorities to warn about completely unforeseeable actions of wild animals such as indicated in this case.

The court concludes that actionable negligence is not shown on the part of the defendant and this order is hereby entered denying and dismissing plaintiff's claim.

---

1. Compare Williams v. United States, E.D. Mich, unreported, decided October 6, 1961, where the successful plaintiff had been attacked on a trail after being assured by a ranger that he had more to fear from Indians than from bears.